## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS - AMARILLO DIVISION

| | | |
|---|---|---|
| **MIKE FISHER** | § | |
| *Plaintiff,* | § | |
| **v.** | § | 2:20-cv-64 |
| **CITY OF AMARILLO, GINGER NELSON**, **for herself** | § | |
| **and as mayor of CITY OF AMARILLO, ELAINE HAYS,** | § | |
| **EDDY SAUER, FREDA POWELL, HOWARD SMITH,** | § | **JURY TRIAL** |
| **AMARILLO NATIONAL BANK, WILLIAM WARE,** | § | **IS REQUESTED.** |
| **RICHARD WARE, II, PLAZA AMARILLO, LLC, STEP** | § | |
| **VALUES, LLC, dba DUNKIN DONUTS, DUNKIN** | § | |
| **BRANDS, INC., FRESH BURGER, LLC dba BURGERFI,** | § | |
| **BURGER FI INT'L, LLC, EDIT CLEAN, LLC dba TIDE** | § | |
| **DRY CLEANERS, THE PROCTER & GAMBLE CO.,** | § | |
| **FIVE S BUILDINGS, LLC, 45TH & SONCY, LLC,** | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR VIOLATION OF DUE PROCESS

**COMES NOW** Plaintiff, MIKE FISHER, and files this petition against the City of Amarillo under 42 USC § 1983 for depriving Plaintiff of his right to due process and neighboring businesses for their violation of restrictive covenants designed to protect his residential use. This suit also seeks damages from parties who conspire under § 1985 to protect those interests.

Summarizing, the defendants are operating a set of three franchises on the corner of a residential subdivision, ignoring deed restrictions which restrict the businesses' operations, and creating a private nuisance to the plaintiff, damage the plaintiff's use of his property, and diminish the quality of life he should receive when living in a residential subdivision.

To protect the businesses which are violating those covenants, the City of Amarillo has deliberately targeted Plaintiff with unwarranted regulatory enforcement action in order to punish him for asking the City to enforce its own rules. Plaintiff will show that city council members are acting to protect those businesses on behalf of Amarillo National Bank and its owners, who "donate" to city council members and treat council members as little more than their employees. The bank's owners profited from its sale of property to the subject franchises after holding the property illegally for more than a decade, and seek to protect the buyers from the City's rules.

# I.    PARTIES AND SERVICE

1.    **Plaintiff, Mike Fisher**, ("Fisher" or "Plaintiff") resides at 4410 Van Kriston Dr, Amarillo, Texas, Sleepy Hollow #71, Lot 010, Block 045; ID: R-073-0541-1460.0 ("Home").

2.    **Defendant, Plaza Amarillo, LLC** ("Plaza"), is located at P.O.B. 10275, Marina Del Rey, CA 90295-6275. PLAZA owns 4411 Soncy ("Property"), and may be served at National Registered Agents Inc., 1999 Bryan Street, Ste. 900, Dallas, Texas 75201-3136, or its manager, Frank Rodd, at P.O.B. 10275, Marina Del Rey, CA 90295-6275, or wherever he may be found.

3.    **Defendant Step Values, LLC**, f.k.a. Niknud, LLC, d.b.a. Dunkin Donuts ("Dunkin"), located on the Property, and can be served to any of its officers, including Justin Sharbutt, or Brandt Stravlo at 10606 Richmond Ave., Lubbock, TX 79424, or agent/officer, David Sharbutt, 5807 63rd Str., Ste. 100, Lubbock, TX 79424 or 4412 74th Street, Ste B-100, Lubbock, TX 79424.

4.    **Defendant Fresh Burger, LLC** d.b.a. BurgerFi ("BurgerFi") is a domestic limited liability company operating on the Property, which may be served to Justin Sharbutt (CEO) or David Sharbutt (agent) at 5807 63rd Street, Ste. 100, Lubbock, TX 79424, or Brandt Stravlo (president) at 10606 Richmond Ave., Lubbock, TX 79493, or anywhere they are found.

5.    **Defendant Edit Clean, LLC**, d.b.a. Tide Dry Cleaners ("Tide"), is a domestic limited liability company located at 5807 63rd St., Unit 100, Lubbock, TX 79424-2741, and can be served by delivering process to Justin Sharbutt (CEO), David Sharbutt (agent), or Brandt Stravlo (president), at the addresses stated above, or anywhere any of the three can be found.

6.    **Defendant BurgerFi International, LLC** ("BurgerFi Int'l"), is the franchisor for Defendant Fresh Burger LLC d.b.a. BurgerFi, and a domestic limited liability company operating from 105 U.S. Highway 1, North Palm Beach, FL USA 33408-5401 and may be served by serving the Texas Secretary of State pursuant to TEX. CIV. PRAC. & REM. CODE § 17.044(b).

7.     **Defendant The Procter & Gamble Company** ("P&G") is franchisor for Defendant Edit Clean, LLC, d.b.a. Tide Dry Cleaners, and a public corporation at 1 P&G Plaza, Cincinnati, Ohio 45202, and may be served by serving the Texas Secretary of State.

8.     **Defendant Dunkin' Brands Inc.** ("Dunkin Brands") is the corporate franchisor for Defendant Step Value d.b.a. Dunkin Donuts and located at 130 Royall Street, Canton, MA 02021, and may be served by serving the Texas Secretary of State.

9.     **Defendant Five S Buildings, LLC** ("Five S") is a holding company which formerly owned the property at 4411 Soncy, bought in 2017 and sold to 45th & Soncy, LLC, which sold the property to Plaza Amarillo in 2019. It can be served through Justin Sharbutt (registered agent) or David Sharbutt (governing manager) at 5807 63rd Str, Suite 100, Lubbock, TX 79424.

10.    **Defendant 45th & Soncy, LLC** ("45TH") purchased the Property from FIVE S and sold it to PLAZA. 45TH can be served through Justin Sharbutt (reg. agent) at 5807 63rd Street, Suite 100, Lubbock, TX 79424 or 4621 91st Street, Lubbock, Texas 79424, or Mitchell Anderson (vice president) at 4409 110th St., Lubbock, Texas 79424, or wherever they may be found.

11.    **Defendant CITY OF AMARILLO** ("City") is a home-rule municipality in Potter and Randall Counties in the State of Texas.  The City may be served with process through its mayor, Ginger Nelson, at 601 South Buchanan Street, Amarillo, Texas 79101.

12.    **Defendant Ginger Nelson** is Mayor of the City of Amarillo and resides at 2120 S. Harrison Street, Amarillo, TX 79109-2625.

13.    **Defendant Elaine Hays** is on the City Council of the City of Amarillo and resides at 1520 S. Lamar Street, Amarillo, TX 79102-2318.

14.    **Defendant Eddy Sauer** is on the City Council of the City of Amarillo, resides at 9 Care Cir, Amarillo, TX 79124, and works at Sherman Dental.

15.     **Defendant Freda Powell** is on the City Council of the City of Amarillo and resides at 509 N Hughes St, Amarillo, TX 79107, and works at Warford Walker Mortuary Inc.

16.     **Defendant Howard Smith** is on the City Council of the City of Amarillo and resides at 1616 S. Polk Street, Amarillo, TX 79102.

17.     **Defendant AMARILLO NATIONAL BANK** ("ANB") operates at 410 S. Taylor, Amarillo, TX, and may be served to its agent, Jerry Ivy, or through Richard or William Ware.

18.     **Defendant Richard C. Ware, II** resides at 3012 S Hughes St, Amarillo, TX 79109-3515, and is sued in his personal capacity.

19.     **Defendant William Ware** resides at 3012 S. Ong St, Amarillo, TX 79109-3542, and is sued in his personal capacity.

20.     The phrase "**Franchise Defendants**" refers to Dunkin, BurgerFi, and Tide.

21.     The phrase "**Franchisor Defendants**" refers to BurgerFi Int'l, P&G, and Dunkin Brands.

22.     The phrase "**Council Defendants**" corporately refers to the named members of the City Council of Amarillo, named in both individual and official capacities, except Howard Smith, who is sued in his official capacity only.

## II.    JURISDICTION AND VENUE

23.     This Court has subject-matter jurisdiction over this suit because it arises under U.S. CONST. amend. XIV, § 1. "Nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." 28 U.S.C. § 1331 (Federal Question).

24.     This action is brought under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985 which provides redress to those deprived of civil rights under color of state law against those who work and conspire toward that end under 28 U.S.C. § 1343(a)(3)(4) and § 1331.

25.     The Court has authority to grant declaratory relief, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Remedies are available under 42 U.S.C. § 1983.

26.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' state claims because the claims are related to its constitutional claims within this Court's original jurisdiction and form part of the same case under Article III of the United States Constitution.

27.     This Court has personal jurisdiction over the defendants, who own property and run the business subject of this suit in Dallas, where the events leading to this suit have all occurred.

28.     Venue is proper in this district under 28 U.S.C. § 1391(B)(2), because all of the events or omissions giving rise to this claim occurred in this District and because all of the property at issue is situated in this District. Venue also lies under 28 U.S.C. § 1400(a), because defendants reside or may be found in this district.

29.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

30.     Venue is proper in Randall County, Texas because all events giving rise to this suit occurred in Randall County, Texas. Venue is also proper in Randall County, Texas because all Defendants either operate in or contract with other Defendants in Randall County, Texas.

31.     This Court has personal jurisdiction over the Franchisor Defendants P&G, BurgerFi Int'l and Dunkin Brands because they contracted with Franchise Defendants Tide, BurgerFi, and Dunkin, to perform a contract in Texas, giving Texas long-arm jurisdiction under Section 17.042 of the Texas Civil Practices and Remedies Code.

32.     This Court has personal jurisdiction over all other named defendants as individuals or limited liability companies formed in Texas committing acts at issue in this case.

33.     Venue in Randall County is proper under TEX. CIV. PRAC. & REM. CODE § 15.002.

## III.  FACTS

A.  <u>Development of the Private Nuisance</u>

34.     Plaintiff purchased the Home located at 4410 Van Kriston Dr, Amarillo, Texas, in June of 2012. It is legally described as Sleepy Hollow #71, Lot 010, Block 045, in the Sleepy Hollow subdivision. PRAD identifies the property using Property ID: R-073-0541-1460.0.

35.     Certain deed restrictions (a.k.a. restrictive covenants) have been in the property records of Randall County since 1993, and encumber the Sleepy Hollow subdivision, including: a prohibition on trade which may become an annoyance to the neighborhood (1c), a limit of one professional sign of a restricted size (1e), prohibition of fences in front of the set-back line (1g), roofs may not include composition, fiberglass, metal, or tin shingles (3d). (See Exhibit A.)

36.     When Plaintiff purchased his Home in 2012, the adjacent property at 4411 Soncy ("Property") was undeveloped and owned by Amarillo National Bank ("ANB"). ANB sold the Property to Five S in May 2015, which in turn sold the Property to 45TH in January of 2017. Finally, the 4411 Soncy property was sold to Plaza in May of 2019.

37.     In spite of the deed restrictions, Five S began development of the Property in mid-2016, which resulted in the small commercial strip center of about ten thousand square feet and several suites that currently occupies the lot.

38.     Plaintiff has been subject to several chronic nuisances as a result of the commercial strip center, including but not limited to brightly-illuminated signs shining through the windows of his home, oil and other liquids discarded on the ground near his in-ground pool, noise from delivery and other commercial vehicles, and numerous other nuisances which particularly disturb his home life and that of his neighbors.

39.     Plaintiff has invested a great deal of personal resources into improving and adding value to his Property, only to see its value eroded by its proximity to the strip mall on the Property. These efforts to improve his lot include construction of an in-ground pool which has become unusable much of the time due to commercial noise and unpleasant smells.

40.     Plaintiff's home has decreased in value ever since the construction of the commercial strip center: Potter-Randall County Appraisal District initially assessed the home at a value of $340,652 but amended its assessment to a value of $290,904 after taking the home's proximity to the strip center into consideration.

41.     Upon information and belief, the Tide laundry facility appears to be performing dry cleaning work that exceeds that which is permitted in the General Retail zoning district, in that it is not allowed to perform the dry cleaning of clothing on site.

42.     The three national Franchisor Defendants of the three Franchise Defendants assisted the Franchisee Defendants in locating their facility and instructed them regarding the construction of their facilities and operations. As beneficiaries of royalties paid to them from the local franchisees, the Franchisor Defendants instruct and manage the Franchisee Defendants, approving the locations and deriving benefits in the form of regularly paid royalties, and are therefore liable for the wrongful behavior of the Local Franchisees.

43.     Plaintiff has often complained about the above issues to Defendant City of Amarillo. In response, the City has responded as minimally as possible. The City's enforcement actions show a pattern based on political considerations, rather than the reasonable exercise of its police power and consideration of its taxpayers' rights.

44.     The Franchise Defendants have refused to respond to Plaintiff's attempt to communicate on this matter, and the City has refused to enforce its rules. The result is that Plaintiff suffers the

mental anguish of what fresh new hell awaits his arrival - whether it is loud sounds at night, or bright lights turned on too early, or yet a new unwelcome stench from some rotting hamburger mixed with dry cleaning fluids.

45.     After sufficient discovery, Plaintiffs will show that some businesses are favored by the City, while Defendant is disfavored and not equally treated. For example, on January 2, 2019, Plaintiff complained to the City regarding unsanitary and dangerous conditions behind the Franchise Defendants, directly behind Plaintiffs' home. The Franchise Defendants and their landlord Defendant Plaza operated to permit raw sewage and chemicals coming from the ground where electrical wiring was exposed. Waste was seeping into the ground at two separate points of the parking lot. The back door patio to BurgerFi was covered in grease. Grease and oil poured into the ground soil continuously for over 30 days during that time. Cigarette butts, trash, and food preparation gloves were caked into the grease on the ground, and grease and raw sewage trailing through the entire patio area where customers sat, ate, and walked to the parking lot. City inspected BurgerFi due to the Plaintiff's complaint, but refused to even cite the facilities, merely informing them that they needed to have the area cleaned up within a few days.

46.     Contrary to the lackadaisical approach taken by the City to the Franchise Defendants, agents from the City's Health Department visited Plaintiff's business located outside of city limits on February 7, 2019, claiming a need to inspect Plaintiff's septic system because they had reason to believe it had been modified *in the 1990s*. The septic plans the Health Department agents had in their possession were for a different address located a quarter of a mile away.

47.     Undeterred by its previous mistake, on February 8th, 2019, agents for the City's Health Department came back to Plaintiff's business and literally kicked on the door for several minutes. Before leaving, they left a Notice of Violation on the door stating that raw sewage was

exposed by open pipes and threatened to put Plaintiff out of business permanently. Plaintiff contacted the City's Health Department to inform it that its agents were mistaken, informing them that the septic pipes on Plaintiff's property were capped off and always have been. The pipes lead nowhere, nothing is exposed, no code violations existed on Plaintiffs property.

48.     Still motivated to harass Plaintiff, agents for the City of Amarillo appeared at Plaintiff's business with a search warrant on February 21st, 2019, accompanied by several Randall County Sheriffs concerning the septic pipes. After a search, the agents found no violations.

49.     Lastly, in August 2019, Troy Ducheneaux, claiming to be the Fire Marshall of Randall County, appeared on Plaintiff's business, accompanied by a Randal County deputy sheriff, to investigate a fire, and although no law was broken, Plaintiff was arrested for violating "the Clean Air Act" and was booked into Randal County Jail and released only when bail of $1500 was paid. Plaintiff remains on bail at this time, the only time in his life when he has been arrested. Plaintiff overheard the deputy sheriff say he was there to provide transport, as though it was always determined that Plaintiff was going to be arrested. Plaintiff is still unaware of what act he committed that violated the Clean Air Act. Plaintiff is not suing Randal County at this time, pending discovery to determine the connection between the City and County on these matters.

50.     During the summer of 2019, Vince's Pizza was shut down due to the City forcing the owner to upgrade his vent hood, a process begun when the business obtained a permit to replace its water heater. Amarillo's City Health Department came in while he was having the water heater replaced and shut down the business until the vent hood met their evolving standards. Meanwhile, Plaintiffs complained multiple times to the same Health Department regarding improper disposal of grease and the overflowing grease trap ten feet from the property line, but the City would not even cite businesses on the Property.

B.  Amarillo National Bank, the Wares, and Amarillo City Council

51.     Prior to the above events, Amarillo National Bank ("ANB") owned the Property, which it acquired on or about August 2, 2005.

52.     Under 12 USC § 29, a national bank can hold property for no more than five years without obtaining regulatory approval for another five years. Under no circumstances may a bank hold property for more than ten years. Contrary to federal law, ANB held the Property for more than ten years before selling it to Five S in May 2015.

53.     As ANB was under regulatory pressure to sell the Property, and the Property was burdened by the above-discussed property restrictions, sale of the Property for commercial purposes was difficult.

54.     ANB's owners, Richard Ware and William Ware, had been providing campaign contributions to several members of the Amarillo City Council for some time. Recent data shows more than $6,000 in recent years to Mayor Ginger Nelson, and more than $4,000 to Elaine Hays. The Wares also give substantial sums of money approaching $30,000 to Amarillo Matters, a local political action committee that has supported these same individuals, and has garnered favor with other civic administrators by donating to favored causes, such as a donation to the downtown campus of WTAMU.

55.     While a donation to a local educational facility may seem like an act of generosity, the full story includes the reality that the donated building was purchased from the mayor's husband, so the complete picture is one of a local businessman using legal means to bribe the mayor.

56.     Additionally, Councilman Eddie Sauer owns property on which the Wares brothers are constructing a restaurant. Sauer recently admitted that he had a business relationship with the Wares brothers in recusing himself during a council vote wherein the council approved a tax

increment reinvestment zone directly benefits Amarillo Brewing Company Restaurant, which the Wares own, and which is leasing space from Dubs Development, LLC, which owns 621 S Polk St in Amarillo. Sauer's admitted relationship with the Wares has yet to be identified; but the plaintiff does not dispute the public admission made at a council meeting.

57.     Upon information and belief, the city council has also voted to give a $75,000 facade to the aforementioned restaurant, a grant to the Wares to pay for signage.

58.     Plaintiffs recognize that donations to elected officials often result in benefits bestowed on the contributors of those donations, and the differences between good government, graft, and bribery is often difficult to discern, and typically unactionable in a civil suit. However, in this case, the Wares realized that their bank needed to sell the Property, and sale of the Property was difficult because of the deed restrictions that make commercial use problematic unless they could use their political power and "contributions" (e.g., bribes, in this case) given to Amarillo's council members and gifts to the city administration, including the donation to the downtown campus of WTAMU of a building purchase from the mayor's husband.

59.     The Wares' gifting has led to the City's decision not to enforce its sign ordinance and health ordinances against the three Franchise Defendants, who are political allies of the Wares. Further, the City "discourages" anyone complaining of their operations by leaning against those individuals with regulatory zeal in a manner that would bring a smile to Mario Puzo.

60.     The events herein described are not those of a negligent city staff or council, but non-negligent acts made deliberately for a purpose.

61.     In this case, the Wares convinced Five S to buy the Property in May 2015, promising the buyer that they would have no regulatory difficulties, and then the Wares used their considerable political muscle to pressure the city council into acting (or failing to act) as discussed above.

62.     Five S enjoyed the benefit of selling lots for businesses unlikely to survive if compelled to follow the City's ordinances and comply with deed restrictions which burden the Property. The owners of Five S who formed this relationship with ANB and the Wares also own the Franchise Defendants. For their cooperation and misuse of city power to protect the Franchise Defendants, the Council Defendants enjoyed increased contributions to their campaigns from the Ware family (except Howard Smith, who is sued only in his official capacity).

63.     For their contributions to the Council Defendants, ANB was able to offload a difficult property it had held onto for an illegally long period, which if noticed by the federal administration, would garner a negative response. ANB also enjoyed the sale of the Property at a higher price than it would otherwise have done.

64.     The result of the cooperation between all these government officials and a favored civic actor is an unhealthy, noisy, and smelly backyard constituting a nuisance to the plaintiff and a detriment to home values.

## IV.   APPLICATION OF THE DISCOVERY RULE

65.     Plaintiff was not able to recognize many of the actions herein described as illegal or actionable until he was actively harassed recently. Some of the connections between the parties have only become apparent after substantial investigative work. Thus, Plaintiff requests that the discovery rule toll any limitations on any of his claims made herein.

## V.   APPLICABLE LEGAL AUTHORITIES

### A.  Concerning Property

66.     A "restrictive covenant" is "any covenant, condition, or restriction contained in a dedicatory instrument, whether mandatory, prohibitive, permissive, or administrative." TEX. PROP. CODE § 202.001(4).

67.     Any interested property owner may enforce a restrictive covenant. *Anderson v. New Prop. Owners' Ass'n of Newport, Inc.*, No. 06-02-00152-CV, 2003 Tex. App. LEXIS 9077, at *10 (Tex. App.—Texarkana Oct. 24, 2003).

68.     The statute of limitations for suits to enforce deed restrictions is four years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.051.

69.     TEX. PROP. CODE § 202.004(b) provides that a property owners' association or other representative designated by an owner of real property may initiate, defend, or intervene, in litigation or an administrative proceeding affecting the enforcement of a restrictive covenant or the protection, preservation, or operation of the property covered by the dedicatory instrument. See also *Anderson v. New Prop. Owners' Ass'n of Newport, Inc.*, No. 06-02-00152-CV, 2003 Tex. App. LEXIS 9077, at *10 (Tex. App.—Texarkana Oct. 24, 2003)("[A]ny interested property owner may enforce a restrictive covenant").

70.     TEX. PROP. CODE § 5.006 provides for attorney fees to a prevailing party who asserted an action to enforce restrictive covenants.

71.     Typically, injunctive relief may only be granted upon a showing of (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law. However, a movant seeking an injunction to enforce a restrictive covenant is not required to show proof of irreparable injury, but need only show that the defendant intends to breach the restrictive covenant. *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 849 (Tex. App.—Houston [14th Dist.] 2000).

72.     Texas courts recognize an exception in restrictive covenant cases for permanent injunctions where a distinct or substantial breach is shown without regard to damages or irreparable injury. *Id.*

73.     The elements of a takings claim are: (1) a governmental unit intentionally performed certain acts (2) that resulted in a taking or damaging of the property (3) that was for public use. *City of San Antonio v. Pollock*, 155 S.W.3d 322, 326 (Tex. App.—San Antonio 2004).

**B.  Concerning Conspiracy**

74.     Civil conspiracy requires: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on a course of action; (4) at least one unlawful and overt act; and (5) damages as the proximate result. *Juhl v. Airington*, 936 S.W.2d 640, 641 (Tex. 1996).

75.     Stated another way, conspiracy may be recognized to find liability for a tortious act against all those who in pursuance of a common plan to commit a tortious act by either actively taking part or furthering it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt the wrongdoer's acts done for their benefit. *Id*.

76.     "Five factors which can be relevant to whether the defendant substantially assisted the wrongdoer are: 1) the nature of the wrongful act; 2) the kind and amount of the assistance; 3) the relation of the defendant and the actor; 4) the presence or absence of the defendant at the occurrence of the wrongful act; and 5) the defendant's state of mind." *Id*.

77.     Additionally, 42 U.S.C. 1985 permits suit for conspiracy when multiple people act to conspire to deprive a plaintiff of equal privileges and immunities and preventing authorities of the state to act toward such deprivation.

**C.  Concerning Nuisance**

78.     In proving private nuisance, a plaintiff must prove the effects of substantial interference on the plaintiff are unreasonable, not that the defendant's conduct or land use was unreasonable. "Unreasonable" in nuisance law refers to the reasonable expectations of a normal person on the plaintiff's land." *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 587 (Tex. 2016).

79.     Proof that the nuisance has resulted in a diminution of the land's market value shows or tends to show that the harm is not merely the result of the plaintiff's sensitivity, since loss of market value necessarily means that potential buyers would also be affected by the nuisance. *Id.*

**D. Immunity**

80.     "A party is entitled to compensation when his property has been damaged, as fully as if his property had been actually taken or destroyed. However, TEX. CONST. art. I, § 17 limits compensation to damages "for or applied to public use." Courts interpret that phrase to mean damages incident to the construction and operation of a public work. Courts also permit recovery of damages upon proof of a nuisance. To come within the TEX. CONST. art. I, § 17, exception to governmental immunity, however, a party must bring her nuisance suit in the nature of a takings claim." *City of San Antonio v. Pollock*, 155 S.W.3d 322, 326 (Tex. App.—San Antonio 2004).

81.     Cities are generally immune from tort liability, but can be found liable for non-negligent performance of government functions:

> Although city was generally immune from tort liability in the performance of its governmental functions, including the maintenance and operation of a sanitary sewer system, pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(9), city could be found liable for nuisance caused by the non-negligent performance of government functions and, as such, city was not entitled to summary judgment."

*Bible Baptist Church v. Cleburne*, 848 S.W.2d 826, 1993 Tex. App. LEXIS 491 (Tex. App. Waco Feb. 17, 1993, writ denied).

## VI.   CLAIM: DECLARATORY JUDGMENT (under Texas law)

82.     Plaintiff seeks Declaratory Judgment, pursuant to the Texas Uniform Declaratory Judgments Act, Chapter 37 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE. Plaintiff seeks such declaration under Texas law, rather than federal law, because the declaration concerns Texas issues, rather than the due process issues enforced by § 1983.

83.     Plaintiff asserts that the controversy between the parties would be terminated by a declaratory judgment that Franchise Defendants have violated enforceable restrictive covenants.

84.     Plaintiff seeks a declaration that the Franchise Defendants may not continue to violate the restrictive covenants as discussed above.

85.     Plaintiff requests that the Court award damages to Plaintiff and attorney fees pursuant to TEX. CIV. PRAC. & REM. CODE § 37.

## VII.  CLAIM: ENFORCEMENT OF RESTRICTIVE COVENANT - CONTRACT

86.     Plaintiff resides in the same subdivision as the Property, which is owned by Defendant Plaza, on which Franchise Defendants operate. Plaintiff is a proper party to bring this suit.

87.     Defendant Plaza violated the covenants that burden the Property by approving signage and allowing businesses to open which by their nature as franchises for dry cleaning and restaurants were always going to require more signage than allowed and violate the covenants, which are enforced as contracts.

88.     Plaintiff seeks economic damages for the above-described violations in the amount of the damage to the value of Plaintiff's home, and attorney fees.

## VIII. CLAIM: PRIVATE NUISANCE

89.     Plaintiff alleges that the conditions described herein constitute a private nuisance which violates the expectations that every normal person would have who occupies Plaintiff's land.

90.     Plaintiff seeks damages in the amount of the loss of use of his backyard, the lost value of his home, which exceeds $50,000, and exemplary damages against the Franchise Defendants and Franchisor Defendants for their pattern of ignoring the dead restrictions on their Property.

91.     Plaintiff also alleges that Franchisor Defendants and Plaza should be liable for these damages, as the franchise agreement give Franchisor Defendants the obligation to assist and

approve the locations of the franchises placed under the names.

92.     Lastly, Plaintiff alleges damages should be laid against the Council Defendants, ANB, and the Wares, based on the conspiracy between them to allow the Franchise Defendants to set up businesses where they were likely to violate the deed restrictions, and their actions to protect the Franchise Defendants and harass Plaintiff.

## IX.   CLAIM: PUBLIC NUISANCE

93.     The elements of a takings claim are: (1) that the governmental unit intentionally performed certain acts, (2) that the acts resulted in a taking or damaging of the property; and (3) that the taking was for public use. *City of San Antonio v. Pollock*, 155 S.W.3d 322, 326 (Tex. App.—San Antonio 2004).

94.     Plaintiff alleges that the conditions described herein constitute a public nuisance which violates the expectations that every normal person would have who occupies Plaintiff's land.

## X.   CLAIM - INJUNCTIVE RELIEF

95.     Plaintiff requests a permanent injunction against Franchise Defendants to prevent them from further violations of the restrictive covenants, which may be granted if irreparable injury to real or personal property is threatened. TEX. CIV. PRAC. REM. CODE § 65.011(5).

96.     An applicant seeking injunctive relief to enforce a restrictive covenant is not required to prove irreparable injury, but need only show that the non-movant intends to breach the covenant.

## XI.   CLAIM – DEPRIVATION OF DUE PROCESS (42 USC § 1983)

97.     Plaintiff seeks damages from the City of Amarillo and its council members for their failure to respect Plaintiff's constitutional rights. Federal law 42 USC § 1983 provides a plaintiff to sue governments for such failures, and provides also for attorney fees in federal or state court.

98.     By its pattern of harassing Plaintiff and failing to exercise its police powers in a selective

manner so that a continuing nuisance is allowed to flourish while Plaintiff is repeatedly harassed over non-existent violation on property outside Amarillo's city limits, the City has filed to provide equal protection under its laws.

99.     Further, the City's actions have resulted in a decrease in the value of Plaintiff's home in an amount exceeding $50,000. This decrease is not the result of some benign accident of design by a City's inept planners, but created by a determination to protect some parties and not others. Plaintiff contends that the loss of value, deliberately caused, constitutes a taking under the Fifth Amendment to the United States by the City of Amarillo.

## XII.  CLAIM - DECLARATORY JUDGMENT - BASED ON TEXAS CONSTITUTION

100.    As discussed above, Plaintiff seeks a declaratory judgment that the actions of the City of Amarillo constitute a violation of the rights guaranteed citizens of Texas under Article I, § 3 (failing to provide equal protection of the law) and § 19 (depriving plaintiffs of their property).

## XIII. CLAIM - CONSPIRACY (state law and 42 U.S.C. § 1985)

101.    As discussed prior, Plaintiff alleges that all of the defendants named in this suit should be liable for the damages suffered by Plaintiff, as they each cooperated in such a way that Plaintiff was damaged with a substantial loss of home value. While discovery may assist Plaintiff to learn that some parties will be more liable than others, Plaintiff has alleged above how each defendant gained by participating in the charade, and every defendant knew or should have known of the deed restrictions, and every defendant knew or should have known that the signage used on these businesses was going to violate those restrictions, leading inexorably to home value damage. Certainly every reasonable person can tell from casual observation that ongoing noise and smell would diminish the enjoyment of a swimming pool installed in Plaintiff's backyard.

102.    Additionally, the City and Council Defendants acted to use the City's agents to harass

Plaintiff and cause him mental anguish and deprive him of the peaceful use of his home, deliberately acting to permit an ongoing private nuisance, depriving Plaintiff of his rights and privileges, and to further harass him at his business based on ludicrous excuses regarding exposed pipes and fires, among other acts, a violation of 42 U.S.C. § 1985(3).

### XIV. CLAIM - EXEMPLARY DAMAGES

103.    The Franchisee Defendants have acted deliberately, after multiple warnings, requests, and demands by Plaintiff, but continued to violate the restrictive covenants and city ordinances, knowing such violations to be destructive to the health and well being of Plaintiff.

104.    Defendants' continued determination to damage Plaintiff after these warnings and demands warrants exemplary damages, which Plaintiff requests.

### XV.  WAIVER OF IMMUNITY

105.    Plaintiff asserts that the non-negligent actions of the City as described herein waive immunity, as described in *Bible Baptist Church v. Cleburne*, 848 S.W.2d 826, 1993 Tex. App. LEXIS 491 (Tex. App. Waco Feb. 17, 1993, writ denied).

### XVI. CONDITIONS PRECEDENT

106.    Plaintiff has satisfied all conditions precedent to bring this suit.

### XVII.  DAMAGES

107.    Plaintiff seeks economic damages from Defendants for the loss of home value, mental anguish, and attorney fees as appropriate, and economic damages for the loss of his homestead's value based on Defendants' past and ongoing actions based on nuisance, and on violations of the restrictive covenants, for which attorney fees are also sought.

108.    Plaintiff seeks a permanent injunction requiring Defendants to comply with Sleepy Hollow subdivision's restrictive covenants, and all local, state, and federal laws, and regulations.

## XVIII. ATTORNEY'S FEES

109.    Plaintiff seeks recovery of attorney's fees pursuant to TEX. PROP. CODE § 5.006,  TEX. CIV. PRAC. & REM. CODE § 37.009 and § 38.001, and 42 USC 1988.

## XIX. PRAYER

WHEREFORE  PREMISES  CONSIDERED,  Plaintiff  requests  a  jury  trial  and  judgment in favor of Plaintiff and against Defendants, finding them jointly and severally, in violation of the Deed Restrictions of Sleepy Hollow subdivision and federal law at 42 USC § 1983 and § 1988, and:

    a.  Award  Plaintiff  damages  for  nuisance,  breach  of  contract,  declaratory  relief,  mental anguish,  and  injunctive  relief  as  described  above  against  the  Franchise  Defendants, Franchisor Defendants, Five S, and Plaza.

    b.  Award Plaintiff damages against the Council Defendants, ANB, and the Wares for the same monetary damages as against the Franchise Defendants based on conspiracy.

    c.  Enjoin Franchise Defendants from further violations of the Deed Restrictions;

    d.  Reasonable and necessary attorney's fees;

    e.  costs of court;

    f.  post-judgment interest at the lawful  rate, and;

    g.  All other relief to which Plaintiff may be entitled in law and equity.


Respectfully submitted,

By:____/s/Warren V. Norred_____
Warren V. Norred, Texas Bar No. 24045094
C. Chad Lampe, Texas Bar No. 24045042
200 E. Abram St., Suite 300, Arlington, TX  76010
Tel. (817) 709-3984; Fax. (817) 524-6686
Attorneys for Plaintiff

Darrell R. Carey, Texas Bar No. 03791700
Law Offices of Darrell R. Carey
300 15th Street
Canyon, Texas 79015-2827
lawofficesofdarrellrcarey@gmail.com

COVENANTS AND RESTRICTIONS
SLEEPY HOLLOW UNIT 71, AN ADDITION TO
THE CITY OF AMARILLO, RANDALL COUNTY, TEXAS

RICKEY CULP DEVELOPERS, INC., a Texas corporation, the owner of all lands and lots shown by the Plat of Sleepy Hollow Unit 71, an addition to the City of Amarillo, Randall County, Texas as such Plat appears of record in the Deed Records of Randall County, Texas, in consideration of the benefits to accrue to it and to subsequent owners therein, creates, imposes, and impresses in and upon all of the lots shown by said Plat, the following covenants, which run with the land and shall be binding upon the undersigned, its successors and assigns, and all persons claiming thereunder.

COVENANTS

1. Restriction on use:
(a) All lots shall be used for residential purposes except that only Lot 12 in Block 45 may be used for commercial or other use. All residential lots are to be used for single family units.

(b) No structure shall be erected, placed or permitted on any residential lot other than one single family dwelling, not to exceed two stories in height, together with a private garage, servant's quarters, children's playhouses, greenhouses, or buildings of like nature for the pleasure of the occupants of the main dwelling.

(c) No noxious or offensive trade or activity shall be carried on upon any of the premises nor anything be done thereon which may become an annoyance or a nuisance to the neighborhood. No horses, cows, sheep, chickens, or other livestock shall be kept for any time or purpose, nor shall any domestic pets be kept for commercial breeding or raising on any lots covered by these restrictions.

(d) No building shall be moved upon any lot, and no structure of a temporary character, trailer, basement, tent, shack, garage, barn, or other building shall be used on any lot at any time as a residence, either temporarily or permanently.

(e) No signs of any kind shall be displayed to the public view on any lot except one professional sign not to exceed one square foot in size, one sign of not more than five square feet for advertising the property for sale or rent, or signs used by the builder to advertise the property during the construction process and sales period.

(f) Easements for installation and maintenance of utilities are reserved as shown on the recorded plat and/or recorded of record.

(g) There shall be no fences constructed in the front of the building set back line.

(h) No truck, bus, recreational vehicles, travel trailers, trailers, camper trailers, camper vehicles, boats, or commerical vehicles shall be parked on the street, circle driveways, on in front of any house. No inoperative or junk cars or motor vehicles without current license and safety inspection stickers may be kept on any of the lots.

2. Set Back and Location Requirements:

(a) Every residence constructed or erected on any part of the premises shall be located so that the front point of such residence structure shall be a least twenty-five (25) feet from the front property line. In case of lots with unequal side lot lines, the said 25 feet shall be measured on the shortest side of such lot. Cul-de-sac lots may have a twenty (20) foot front line set back.

(b)  All residences, garages, and out buildings shall have a set back from the side property line  of a distance of not less than six (6) feet.  On corner lots there shall be a side street set back of not less than ten (10) feet, and no wall or fence shall be erected, altered, or maintained closer to any street than the minimum set back line.

(c)  No building site or lot shall be subdivided into a lesser depth than that shown on the plat except for city condemnation for extra width of streets.

(d) All residences shall face the street upon which the front of the lot or building site abuts.

(e)  Any deviation from the requirements of the restrictions under this paragraph 2 may be waived at any time by written waiver of the undersigned or its authorized agent, and all purchasers of lots herein accept properties with this right reserved for the benefit of the undersigned, its successors and assigns, but such waivers shall not affect requirements as may be made by ordinance, nor shall such right here reserved impair the right of all parties to enforce all restrictions not so waived.

3. Construction Requirements:

(a) All structures and use of all structures shall at all times comply with the Zoning Ordinances and Building Codes and Regulations of the City of Amarillo, Texas.

(b)  No residential structure may be erected on any lot in this Sleepy Hollow Unit which shall have an above ground floor area of less than two thousand two hundred (2,200) square feet of floor space, exclusive of garages, servant's quarters, outbuildings, porches, and covered terraces.  Two story houses must have a minimum of eighteen hundred (1,800) square feet on the ground floor.

(c) Every main dwelling house and garage shall be of such construction that sixty-five percent (65%) of the exterior walls shall be of masonry or brick construction, which brick or masonry shall extend below the finish ground level.

(d) Neither concrete blocks nor asbestos shingle siding shall be used for any part of the exterior construction of any dwelling, garage, servant's quarter, or out-building. No composition, fiberglas, metal or tin shingle roofing materials shall be used.

(e) At the time of the construction of the main dwelling house, there shall be constructed at least a double-car garage and a solid concrete driveway on the site.  All garages shall be rear entry and shall not open where it can be seen from the front street. Side entry garages are permitted on the lots siding to Van Kriston Drive, provided that either the main house structure extend eight (8) feet beyond the garage door or there is constructed a screening fence so that the garage doors may not be seen from the front street.  No strip driveways of any type will be allowed.

(f)  At the time of construction of the main dwelling house, there shall be constructed a four foot sidewalk across the front of the lot and down the side of the lot, if that lot is a corner lot, and such sidewalk shall be located adjacent to the curb.

(g)  No out-building, servant's quarters, garage, or other structure shall be more than one (1) story in height unless the main residential structure on the lot is a two-story house, and in that event, such structure may be two stories in height: however, the height of such structure shall not exceed the height of the main residential structure.

4. Original construction and use of the following lots will require that the purchaser thereof initially shall install a sprinkler system in the yard and in the area between the side lot line and the street curb or sidewalk. In addition to the sprinkler, the purchaser/owner occupant shall install and permanently maintain a landscaped area in this side area with at least grass of a permanent nature. The lots are: lots 24 and 25, Block 43, lots 1 and 19, Block 44, lots 1, 10 and 11, Block 45 and lots 3, 4 and 13 Block 46 of said Unit 71.

5. Antenna Installation: To protect all lots from unsightly antenna use within said Unit, it is here provided that there shall not be installed upon any lot in said Unit, any antenna that are visable from the street.

6. Enforcement: If the undersigned, or its successors of assigns, shall violate or threaten to violate any of the covenants herein set out, any person owning property in said Unit may proceed at law or in equity against any person or persons violating or threatening to violate any of the restrictions, either to restrain such violation or to recover damages, provided that no right of reversion is hereby provided or intended.

7. Term: These restrictive covenants shall continue in force for thirty-five (35) years from the date hereof, and thereafter for successive periods of ten (10) years each, unless, after thirty-five (35) years, an instrument in writing, signed by a majority of the then owners of the lots in said Unit, shall have been recorded agreeing to change the covenants, in whole or in part, in which event said instrument shall control.

8. Savings Clause: Invalidation of any of these covenants or restrictions in whole or in part by judgement, legislation, or court order, shall in no way affect any of the other provisions, which shall remain in full force and effect.

Dated: _August 25_ , 1993

RICKEY CULP DEVELOPERS, INC.

by _____
Its President

THE STATE OF TEXAS

COUNTY OF RANDALL

This instrument was acknowledged before me on _August 25_, 1993, by Rickey Culp, President of RICKEY CULP DEVELOPERS, INC. a Texas Corporation, on behalf of said Corporation.

_____
Notary Public in and for the State of Texas

My Commission Expires _____

After filing return to:
Rickey Culp Developers, Inc.
7723 Stuyvesant
Amarillo, Texas 79121

PATRICIA DAHL
Notary Public, State of Texas
My Commission Expires 11-20-93

464942

COVENANTS AND RESTRICTIONS

Sleepy Hollow Unit 71

to

Public

**FILED FOR RECORD**
At 1:40 O'Clock P. M.

AUG 2 6 1993

LeROY HUTTON
County Clerk, Randall County, Texas
By _____
Deputy

RECORDED:   8-27-93

Rickey Culp Developers, Inc.
7723 Stuyvesant
Amarillo, TX   79121

VOL. 1490 PAGE 47

**ROOF #2**

1.2

| STATE OF TEXAS | § |
| | § |
| COUNTY OF RANDALL | § |

ß

## PETITION FOR AMENDING RESTRICTIONS OF SLEEPY HOLLOW UNIT #71

I.

This petition is being circulated among the owners of property in Sleepy Hollow Unit       *1*
#71 in order to amend the terms of restrictions applicable to Sleepy Hollow Unit #71, City
of Amarillo, Randall County, Texas (the "Subdivision"), pursuant to Texas Property Code
Section 201.001 and following.

II.

The pertinent restrictions currently applicable to Sleepy Hollow Unit #71 are
recorded in Volume 1490, page 44 of the Deed Records of Randall County, Texas (the
"Restrictions").

III.

The Subdivision plat for Sleepy Hollow Unit #71 is recorded in Volume 1477, page
51 of the Deed Records of Randall County, Texas.

IV.

The second sentence of the restriction set forth in Section 3. (d) of the Restrictions
at Volume 1490, page 45, will be deleted and replaced. The original text being deleted
(hereinafter the "Original Text") is:

> "No composition, fiberglass, metal, or tin shingle roofing materials shall be
> used."

V.

The proposed text replacing the Original Text (hereinafter the "Proposed Text") is:

"All types of roof materials are allowed, so long as the material meets City of Amarillo, Texas, Building Code, and so long as the material meets restrictions stated herein. Permitted roofing materials include, but are not limited to, wood, composition, metal, decra, laminate, slate, artificial slate, and tile subject to the following restrictions:

A.   Shingles commonly known as "3-tab asphalt" or "3-tab fiberglass" shingles, are not allowed.

B.   All non-wood roof materials must be Class A or better in fire resistance according to the Underwriter's Laboratories Standard 790 or if such standard is not available, then by a similar standard. In addition, all non-wood roof materials must have at least one (1) of the following characteristics:

(i)   Class 4 or better in impact resistance according to the Underwriter's Laboratories Standard 2218 or if such standard is not available, then by a similar standard; or

(ii)   have a 40-year (or longer) limited product warranty; or

(iii)   be 320 pounds (or greater) in weight.

C.   No corrugated metal roofs or standing seam metal roofs are allowed.

D.   The color of the roof must be predominately gray, brown, beige, coffee, dark blue or black; except, in the case of decra or tile, in which reddish or clay color is permissible.

E.   Notwithstanding anything to the contrary herein, all roof materials currently on homes in the Subdivision are exempt from the above requirements."

The intent is to allow for the use of roof materials which are of high quality and which do not detract from the aesthetic or economic value of the neighborhood.

VI.

We, the undersigned owners, each own record title to property in Sleepy Hollow Unit

#71.

VII.

Owners who do not sign the petition must file suit under Property Code Section

201.010 before the 181st day after the date on which the certificate of compliance required

by Property Code Section 201.008(e) is filed, in order to challenge the procedures followed

in amending a restriction.

VIII.

Owners who do not sign this petition may exclude their property from the operation

of the amended restriction by filing a statement electing to exclude their property under

Property Code Section 201.009(b)(4) before one (1) year after the date on which the owner

receives actual notice of filing of this petition.

Respectfully submitted by the Owners of the lots
or tracts set forth on each attached signature
page.

I hereby certify that this signature page is attached to the Petition for Amending Restrictions in Sleepy Hollow Unit #71, City of Amarillo, Randall County, Texas, and that I have read the same.

**I UNDERSTAND THAT THE LAW FIRM PREPARING THIS DOCUMENT DOES NOT REPRESENT ME. I HAVE BEEN ENCOURAGED TO SEEK MY OWN INDEPENDENT LEGAL COUNSEL IN THIS MATTER.**

*William H. Elliott*
William H. Elliott

*Judy A. Elliott*
Judy A. Elliott

7821 Bent Tree Drive, Amarillo, Texas 79121

Legal Description of Property:   Lot 28, Block 43, Sleepy Hollow Unit #71, Amarillo, Randall County, Texas

☑ **INCLUDE** the above-described property in restrictions being amended by this petition.

☐ **EXCLUDE** the above-described property in restrictions being amended by this petition.

**STATE OF TEXAS**          §
                                               §
**COUNTY OF RANDALL**    §

This instrument was acknowledged before me on the 21ST day of September, 2004, by William H. Elliott.



MARTHA ROWELL
MY COMMISSION EXPIRES
August 7, 2007

Notary Public, State of Texas

**STATE OF TEXAS**          §
                                               §
**COUNTY OF RANDALL**    §

This instrument was acknowledged before me on the 8 day of ~~September~~ October, 2004, by Judy A. Elliott.



ANITA McPHERSON
Notary Public
State of Texas
My Comm. Exp. 01-27-07

*Anita L. McPherson*
Notary Public, State of Texas

K:\REAL\BOYKIN - 04\LAND RESTRICTIONS\UNIT 71\Petition for Amending Restrictions.wpd

# EXHIBIT "C"

**8**

### 45th and Soncy

All of Lot No. 12, in Block No. 45, of SLEEPY HOLLOW UNIT NO. 71, an addition to the City of Amarillo, Randall County, Texas, according to the recorded map or plat thereof of record in Volume 1477, Page 51, of the Deed Records of Randall County, Texas, SAVE AND EXCEPT that portion of said Lot 12 being further described by metes and bounds as follows:

5
6

BEGINNING at a 3/8" rebar with a cap marked "RPLS 4664" set in the South line of said Lot 12, whence the Southeast corner of said Lot 12 bears S 89° 47' E. (Base Bearing) for a distance of 193.41 feet to a 1/2" rebar, found;

THENCE N. 89° 47' W. along the South line of said Lot 12 for a distance of 31.47 feet to a 1/2" rebar with a cap marked "PLS 1939" found for the most southerly Southwest corner of said Lot 12;

THENCE N. 45° 15' 43" W. along the Southwesterly line of said Lot 12 for a distance of 23.02 feet to a 1/2" rebar with a cap marked "PLS 1939" found for the most northerly Southwest corner of said Lot 12;

THENCE N. 0° 40' 23" W. for a distance of 31.90 feet to a Brass cap monument, found;

THENCE S. 44° 59' 17" E. along the monumented right-of-way line of Loop 335 (Soncy Road) for a distance of 68.18 feet to the POINT OF BEGINNING.

FILED FOR RECORD
Sue Wicker Bartolino
County Clerk, Randall County, Texas
By _____ Deputy

October 15, 2004 - 3:01 P

This document has been received by this Office for Recording into the Official Public Records. We do hereby swear that we do not discriminate due to Race, Creed, Color, Sex or National Origin.

## NOTICE OF FORMATION OF COMMITTEE TO PETITION TO AMEND RESTRICTIONS FOR SLEEPY HOLLOW UNIT #71

I.

Pursuant to Texas Property Code Section 201.001 and following, a petition committee has been formed to amend the restrictions applicable to Sleepy Hollow Unit #71, City of Amarillo, Randall County, Texas.

II.

The members of the committee are as follows:

| Brent Wade | Rickey Culp | Paul Williamson |
|---|---|---|
| 7808 Covington Parkway | 7810 Lindsey Lane | 7807 Lindsey Lane |
| Amarillo, Texas 79121 | Amarillo, Texas 79121 | Amarillo, Texas 79121 |
| | | |
| Linda Norton | David Breeding | Fred Hancock |
| 7811 Lindsey Lane | 4406 Van Kriston Drive | 7813 Lindsey Lane |
| Amarillo, Texas 79121 | Amarillo, Texas 79121 | Amarillo, Texas 79121 |

III.

The pertinent restrictions currently applicable to Sleepy Hollow Unit #71, are filed of record in Volume 1490, page 44 of the Deed Records of Randall County, Texas (the "Restrictions").

IV.

The subdivision plat for Sleepy Hollow Unit #71 is recorded in Volume 1477, page 51 of the Deed Records of Randall County, Texas.

V.

The matters to be included in the petition are as follows:

The petition will be for the purpose of deleting and replacing the second sentence of Section 3. (d) of the Restrictions which states:

The petition will be for the purpose of deleting and replacing the second sentence of Section 3. (d) of the Restrictions which states:

"No composition, fiberglass, metal, or tin shingle roofing materials shall be used."

VI.

Attached to this notice is a copy of the committee's proposed instrument creating the amendment or modification, which is the Petition for Amending Restrictions of Sleepy Hollow Unit #71. This proposed instrument contains the original restriction and indicates the changes by appropriate deletion and insertion.

Executed by the above named owners and petition committee members, this the 17th day of September, 2004.

Brent Wade

Rickey Culp

Paul Williamson

Linda Norton

David Breeding

Fred Hancock

STATE OF TEXAS        §
                      §
COUNTY OF RANDALL     §

This instrument was acknowledged before me on the 16th day of September, 2004, by Brent Wade.

CHALONE S. HEFLEY
MY COMMISSION EXPIRES
September 17, 2007

Notary Public, State of Texas

**STATE OF TEXAS** §
§
**COUNTY OF RANDALL** §

This instrument was acknowledged before me on the 16th day of September, 2004, by Rickey Culp.

CHALONE S. HEFLEY
MY COMMISSION EXPIRES
September 17, 2007

Notary Public, State of Texas

**STATE OF TEXAS** §
§
**COUNTY OF RANDALL** §

This instrument was acknowledged before me on the 16th day of September, 2004, by Paul Williamson.

CHALONE S. HEFLEY
MY COMMISSION EXPIRES
September 17, 2007

Notary Public, State of Texas

**STATE OF TEXAS** §
§
**COUNTY OF RANDALL** §

This instrument was acknowledged before me on the 16th day of September, 2004, by Linda Norton.

CHALONE S. HEFLEY
MY COMMISSION EXPIRES
September 17, 2007

Notary Public, State of Texas

**STATE OF TEXAS** §
§
**COUNTY OF RANDALL** §

This instrument was acknowledged before me on the ___17th___ day of September, 2004, by David Breeding.

0

[Notary seal: KYLE McKINNEY, NOTARY PUBLIC, STATE OF TEXAS, My Commission Expires]

_Kyle McK_____
Notary Public, State of Texas

STATE OF TEXAS      §
                    §
COUNTY OF RANDALL   §

4

This instrument was acknowledged before me on the ___16th___ day of September, 2004, by Fred Hancock.

[Notary seal: CHALONE S. HEFLEY, MY COMMISSION EXPIRES September 17, 2007]

_Chalone S Hefley_____
Notary Public, State of Texas

**STATE OF TEXAS**     §
                      §
**COUNTY OF RANDALL**  §                                        **0**

## PETITION FOR AMENDING RESTRICTIONS OF SLEEPY HOLLOW UNIT #71

I.

This petition is being circulated among the owners of property in Sleepy Hollow Unit #71 in order to amend the terms of restrictions applicable to Sleepy Hollow Unit #71, City of Amarillo, Randall County, Texas (the "Subdivision"), pursuant to Texas Property Code Section 201.001 and following.

II.

The pertinent restrictions currently applicable to Sleepy Hollow Unit #71 are recorded in Volume 1490, page 44 of the Deed Records of Randall County, Texas (the "Restrictions").

III.

The Subdivision plat for Sleepy Hollow Unit #71 is recorded in Volume 1477, page 51 of the Deed Records of Randall County, Texas.

IV.

The second sentence of the restriction set forth in Section 3 (d) of the Restrictions at Volume 1490, page 45, will be deleted and replaced. The original text being deleted (hereinafter the "Original Text") is:

"No composition, fiberglass, metal, or tin shingle roofing materials shall be used."

V.

The proposed text replacing the Original Text (hereinafter the "Proposed Text") is:

&#xD8;

"All types of roof materials are allowed, so long as the material meets City of Amarillo, Texas, Building Code, and so long as the material meets restrictions stated herein. Permitted roofing materials include, but are not limited to, wood, composition, metal, decra, laminate, slate, artificial slate, and tile subject to the following restrictions:

A.  Shingles commonly known as "3-tab asphalt" or "3-tab fiberglass" shingles, are not allowed.

&#x36;

B.  All non-wood roof materials must be Class A or better in fire resistance according to the Underwriter's Laboratories Standard 790 or if such standard is not available, then by a similar standard. In addition, all non-wood roof materials must have at least one (1) of the following characteristics:

    (i)  Class 4 or better in impact resistance according to the Underwriter's Laboratories Standard 2218 or if such standard is not available, then by a similar standard; or

    (ii)  have a 40-year (or longer) limited product warranty; or

    (iii)  be 320 pounds (or greater) in weight.

C.  No corrugated metal roofs or standing seam metal roofs are allowed.

D.  The color of the roof must be predominately gray, brown, beige, coffee, dark blue or black; except, in the case of decra or tile, in which reddish or clay color is permissible.

E.  Notwithstanding anything to the contrary herein, all roof materials currently on homes in the Subdivision are exempt from the above requirements."

The intent is to allow for the use of roof materials which are of high quality and which do not detract from the aesthetic or economic value of the neighborhood.

VI.

We, the undersigned owners, each own record title to property in Sleepy Hollow Unit #71.

**0**

VII.

Owners who do not sign the petition must file suit under Property Code Section 201.010 before the 181st day after the date on which the certificate of compliance required by Property Code Section 201.008(e) is filed, in order to challenge the procedures followed in amending a restriction.

**7**

VIII.

Owners who do not sign this petition may exclude their property from the operation of the amended restriction by filing a statement electing to exclude their property under Property Code Section 201.009(b)(4) before one (1) year after the date on which the owner receives actual notice of filing of this petition.

Respectfully submitted by the Owners of the lots or tracts set forth on e ach attached signature page.

FILED FOR RECORD
Sue Wichman Bartolino
County Clerk, Randall County, Texas
By: _____ Deputy

September 20, 2004 - 08:00 A

this document has been received by this
Office for Recording into the Official
Public Records.  We do hereby swear that
we do not discriminate due to Race, Creed,
Color, Sex or National Origin.

K:\REAL\BOYKIN - 04\LAND RESTRICTIONS\UNIT 71\Proposed Petition.wpd

PAGE 3

REST   2004026720
5 PGS

**STATE OF TEXAS**                          §

                                            §

**COUNTY OF RANDALL**                       §

1.4

## CERTIFICATE OF COMPLIANCE

We, the undersigned, declare and certify as follows

I.

We are a majority of members of the petition committee formed on the 17th day of September, 2004, to amend the restrictions applicable to Sleepy Hollow Unit #71, City of Amarillo, Randall County, Texas.

II

The petition was filed with the clerk of Randall County, Texas, on the 15th day of October, 2004, and was recorded by the clerk in Instrument No. 0422029, of the Official Public Records of Randall County, Texas.

III.

Notice was given by publication in the Canyon News once a week for two (2) consecutive weeks, on December 5, 2004, and December 12, 2004, in the form shown on Exhibit "A" attached to this certificate

IV

Notice was also given on November 15, 2004, by certified mail, return receipt requested, to each person who owned land in the subdivision as of that date.

K:\REAL\SLEEPY HOLLOW-04\UNIT 71\Certificate of Compliance.wpd                          PAGE 1

Executed by the following members of the petition committee, this __15th__ day

of December, 2004

_____
Brent Wade

_____
Rickey Culp

_____
Paul Williamson

_____
Linda Norton

_____
David Breeding

_____
Fred Hancock



**NOTICE OF FILING PETITION TO AMEND RESTRICTIONS FOR SLEEPY HOLLOW UNIT #71**

Notice is hereby given of the following The owners of property in Sleepy Hollow Unit #71, City of Amarillo, Randall County, Texas, pursuant to Texas Property Code Section 201.001 and following, have executed a petition (the "Petition") for the purpose of amending restrictions applicable to Sleepy Hollow Unit #71 The name of the subdivision covered by the Petition is Sleepy Hollow, Unit #71, Amarillo, Randall County, Texas The proper number of property owners in Sleepy Hollow Unit #71 have signed and acknowledged the Petition The Petition was filed on October 15, 2004, under Clerk's File Number 04 22029, in the Official Public Records of Randall County, Texas The intent of the Petition is to change the said restrictions to allow the use of other alternative roofing materials which are of a high quality and do not detract from the aesthetic or economic value of the neighborhood If someone should have any questions or concerns regarding these Deed Restriction changes, or would like a copy of the Petition, they may contact the Petition Committee for Sleepy Hollow Unit #71 by and through Todd W Boykin Burdett, Morgan, Williamson & Boykin, LLP 3423 Soncy Road, Suite 300 Amarillo, Texas 79119 (806)358-8116 The original Notice was signed by all members of the Petition Committee, who are Brent Wilkamson, Linda Norton, Paul Wade, Rickey Culp, David Breeding and Fred Hancock

---

Published on: Sunday December 5, 2004

The proper charge of such publication for such publication is $59.30. An invoice will follow the affidavit.

Kathy [illegible] Representative

Subscribed and sworn before me this _____ day of _____ 2004

Notary Public, Randall County, Texas

---

**PUBLISHER'S CERTIFICATE**

STATE OF TEXAS
COUNTY OF RANDALL

On this 21st day of December, 2004 personally appeared before me, a Notary Public, within and for said county and state, the undersigned Katy Ely, representative of The Canyon News, a newspaper published at Canyon, Texas, who being duly sworn states on oath that:

Legal Notice

Notice of Filing Petition



## PUBLISHER'S CERTIFICATE

STATE OF TEXAS
COUNTY OF RANDALL

On this 21st day of December,
2004 personally appeared
before me, a Notary Public,
within and for said county
and state, the undersigned
Katy Ely, representative of
*The Canyon News*, a newspaper
published at Canyon, Texas,
who being duly sworn states
on oath that:
Legal Notice:
**Sleepy Hollow Restrictions**

Published on:
Sunday December 12, 2004

The proper charge of such
person for such publication
is $ 59.50. An invoice will
follow this affidavit.

Katy Ely Representative

Subscribed and sworn before
me this _____ day of
2004.

Notary Public, Randall
County, Texas

KRISY THOMASON
NOTARY PUBLIC
STATE OF TEXAS
My commission expires 02-25-2006

**NOTICE OF FILING
PETITION TO AMEND
RESTRICTIONS FOR
SLEEPY HOLLOW
UNIT #71**

Notice is hereby given of the
following
The owners of property in
Sleepy Hollow Unit #71, City
of Amarillo, Randall County,
Texas, pursuant to Texas
Property Code Section
201.001 and following, have
executed a petition (the "Pe-
tition") for the purpose of
amending restrictions appli-
cable to Sleepy Hollow Unit
#71 The name of the subdi-
vision covered by the Peti-
tion is Sleepy Hollow, Unit
#71, Amarillo, Randall County,
Texas The proper number of
property owners in Sleepy
Hollow Unit #71 have signed
and acknowledged the
Petition The Petition was filed
on October 15, 2004, under
Clerk's File Number 04
22029, in the Official Public
Records of Randall County,
Texas The intent of the Peti-
tion is to change the said re-
strictions to allow the use of
other alternative roofing ma-
terials which are of a high
quality and do not detract
from the aesthetic or eco-
nomic value of the neighbor-
hood
If someone should have any
questions or concerns re-
garding these Deed Restric-
tion changes, or would like a
copy of the Petition, they may
contact the Petition Commit-
tee for Sleepy Hollow Unit
#71 by and through
Todd W. Boykin
Burdett, Morgan, Williamson
& Boykin, LLP
3423 Soncy Road, Suite 300
Amarillo, Texas 79119
(806)358-8116
The original Notice was
signed by all members of the
Petition Committee, who are
Brent Wade, Rickey Culp,
Paul Williamson, Linda
Norton, David Breeding and
Fred Hancock

## FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

*Sue Wicker Bartolino*

December 28, 2004   10 34 04 AM   **2004026720**

FEE   $20 00

Sue Wicker Bartolino County Clerk

Randall County   TEXAS



Exhibit A, pl. 23

460924

PLAT

Sleepy Hollow Unit #71

to

Public

**FILED FOR RECORD**

At __9__ O'Clock __A. M.__

JUL  7 1993

LeROY HUTTON
County Clerk, Randall County, Texas

By _____

Deputy

RECORDED:  7-8-93

City of Amarillo
P O Box 1971
Amarillo TX   79186

VOL. 1477 PAGE

52

Commercial Property Sold to AA 

ALT/GF# 5-32773/LKB

DEED 2005015626

2 PGS

3.2

**NOTICE OF CONFIDENTIALITY RIGHTS: If you are a natural person, you may remove or strike any of the following information from this instrument before it is filed for record in the public records: Your social security number or your drivers license number.**

### SPECIAL WARRANTY DEED

THE STATE OF TEXAS

COUNTY OF RANDALL

KNOW ALL MEN BY THESE PRESENTS

THAT, JTD PROPERTIES, L P , hereinafter called GRANTOR(S), for and in consideration of the sum of TEN AND NO/100 ($10 00) DOLLARS and other good and valuable consideration, to the said GRANTOR(S) paid by AMARILLO NATIONAL BANK, a National Banking Association, whose mailing address is PO BOX 1/PLAZA ONE, Amarillo, TX 79101, hereinafter called GRANTEE(S), the receipt and sufficiency of which is hereby acknowledged and confessed, and for which no lien, either expressed or implied, is retained, has (have) Granted, Sold, and Conveyed, and by these presents does (do) Grant, Sell and Convey, unto the said GRANTEE(S), all of the following described property, to-wit

See Exhibit "A" attached hereto and made a part hereof

This conveyance is subject to all valid existing building and use restrictions, easements and rights-of-way of record, visible or apparent, if any, and valid reservations of oil, gas and other mineral interests, if any

TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said GRANTEE(S), his (her) (their) (its) heirs (successors) and assigns forever

GRANTOR(S) hereby bind(s) himself (herself) (themselves) (itself) his (her) (their) (its) heirs, executors and administrators (successors) and assigns, to Warrant and Forever Defend all and singular the said premises unto the said GRANTEE(S) and to the heirs (successors) and assigns of the said GRANTEE(S) against every person whomsoever lawfully claiming, or to claim the same, or any part thereof, by, through, or under GRANTOR(S), but not otherwise

Payment of current taxes on said property is assumed by GRANTEE(S) herein

Whenever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall include all genders, whenever the context so admits

EXECUTED this 2nd day of August, 2005

JTD PROPERTIES, L P ,

By JT Davidson Management, Inc , its General partner

By Joe Ted Davidson, President

STATE OF TEXAS

COUNTY OF POTTER

This instrument was acknowledged before me on the 2ND day of August, 2005, by Joe Ted Davidson, President as President for and on behalf of JTD Properties, L P and on behalf of JT Davidson Management, Inc , its General partner

LaDonna Bonner
NOTARY PUBLIC,
STATE OF TEXAS
My Commission Expires 05-18-2008

Notary Public, State of Texas
My Commission Expires _____

32773.deed.wpd
000105:12 34

1

## EXHIBIT "A"

All of Lot No. 12, in Block No. 45, of Sleepy Hollow Unit No. 71, an addition to the City of Amarillo, Randall County, Texas, according to the recorded map or plat thereof of record in Volume 1477, Page 51, of the Deed Records of Randall County, Texas,

**SAVE AND EXCEPT** that portion of said Lot 12 being further described by metes and bounds as follows:

BEGINNING at a 3/8" rebar with a cap marked "RPLS 4664" set in the South line of said Lot 12, whence the Southeast corner of said Lot 12 bears S 89° 47' E. (Base Bearing) for a distance of 193.41 feet to a 1/2" rebar, found;

THENCE N. 89° 47' W. along the South line of said Lot 12 for a distance of 31.47 feet to a 1/2" rebar with a cap marked "PLS 1939" found for the most Southerly Southwest corner of said Lot 12;

THENCE N. 45° 15' 43" W. along the Southwesterly line of said Lot 12 for a distance of 23.02 feet to a 1/2" rebar with a cap marked "PLS 1939" found for the most Northerly Southwest corner of said Lot 12;

THENCE N. 0° 40' 23" W. for a distance of 31.90 feet to a Brass cap monument, found;

THENCE S. 44° 59' 17" E. along the monumented right-of-way line of loop 335 (Soncy Road) for a distance of 68.18 feet to the POINT OF BEGINNING.


Return to:
Amarillo National Bank
PO Box 1, Plaza One
Amarillo, Texas 79101

FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

*Sue Wicker Bartolino*

August 02, 2005  01 32 51 PM    2005015626

FEE  $16 00

Sue Wicker Bartolino County Clerk

Randall County  TEXAS

Property sold to Five S Building from ANB

8403-UCBICATCO

Return to:
Five S Building LLC
6114 89th Street
Lubbock, TX 79424

**3.3**

## SPECIAL WARRANTY DEED
### WITH VENDOR'S LIEN

Notice of confidentiality rights: If you are a natural person, you may remove or strike any or all of the following information from any instrument that transfers an interest in real property before it is filed for record in the public records: your Social Security number or your driver's license number.

| | |
|---|---|
| Date: | May 29, 2015 |
| Grantor: | **AMARILLO NATIONAL BANK,** a national banking corporation |
| Grantor's Mailing Address: | P.O. Box 1 Amarillo, TX 79105 |
| Grantee: | **FIVE S BUILDING LLC,** a Texas limited liability company |
| Grantee's Mailing Address: | 6114 89th Street Lubbock, TX 79424 |

Consideration:

Cash and a note of even date executed by Grantee and payable to the order of FirstBank & Trust (**Noteholder**) in the principal amount of $962,676.00. The note is secured by a first and superior vendor's lien and superior title retained in this deed in favor of **Noteholder** and by a first-lien deed of trust of even date from Grantee to Barry Orr, Trustee.

Property (including any improvements):

All of Lot No. 12, in Block No. 45, of Sleepy Hollow Unit No. 71, an addition to the City of Amarillo, Randall County, Texas, according to the recorded map or plat thereof of record in Volume 1477, Page 51, of the Deed Records of Randall County, Texas,

SAVE AND EXCEPT that portion of said Lot 12 being further described by metes and bounds as follows:

BEGINNING at a 3/8" rebar with a cap marked "RPLS 4664" set in the South line of said Lot 12, whence the Southeast corner of said Lot 12 bears S 89° 47' E. (Base Bearing) for a distance of 193.41 feet to a 1/2" rebar, found;

THENCE N. 89° 47' W. along the South line of said Lot 12 for a distance of 31.47 feet to a 1/2" rebar with a cap marked "RPLS 1939" found for the most Southerly Southwest corner of said Lot 12;

THENCE N. 45° 15' 43" W. along the Southwesterly line of said Lot 12 for a distance of 23.02 feet to a 1/2" rebar with a cap marked "RPLS 1939" found for the most Northerly Southwest corner of said Lot 12;

THENCE N. 0° 40' 23" W. for a distance of 31.90 feet to a Brass cap monument, found;

THENCE S. 44° 59' 17" E. along the monumented right-of-way line of loop 335 (Soncy Road) for a distance of 68.18 feet to the POINT OF BEGINNING.

Said tract contains a computed area of 1013.7 square feet of land.

Restrictive Covenants:

The Property is subject to the following Restrictive Covenants:

(a)  Prohibited Use:  No financial institution may be constructed or operated on the Property.

(b)  Enforcement.  If Grantee, Grantee's heirs, successors, or assigns, violate or threaten to violate the foregoing Restrictive Covenants, Grantor, Grantor's successors or assigns, may proceed at law or in equity against any person violating or threatening to violate the restriction—either to restrain the violation or to recover damages—but no right of reversion is provided or intended. Failure to enforce this restriction will not be deemed a waiver of the right to do so thereafter.

(c)  Severability.  Invalidation of any of this Restrictive Covenants by judgment, legislation, or court order will not affect any of the other provisions which will remain in full force and effect.

(d)  Duration.  The Restrictive Covenants above run with and bind title to the Property and are perpetual unless waived by Grantor, Grantor's successors or assigns.

Grantor, as the fee simple owner of the Property, establishes the Restrictive Covenants as covenants, conditions, and restrictions, whether mandatory, prohibitive, permissive, or administrative, to regulate the Improvements placed on it. Grantor and Grantee stipulate that:

1.  the Restrictive Covenants touch and concern the Property;

2.  privity of estate exists by reason of the ownership of the Property;

3.  notice is given by filing this Special Warranty Deed in the Official Public Records of Randall County, Texas; and,

4.  the Restrictive Covenants are reasonable, the purpose being for the common benefit of Grantor and Grantee. The Restrictive Covenants run with the land making up the Property, are binding on Grantee and Grantee's heirs, successors, and assigns forever, and inure to the benefit of Grantor and Grantee, and their successors and assigns for the duration stated above.

Reservations from Conveyance:

NONE

Exceptions to Conveyance and Warranty:

> Liens described as part of the Consideration; validly existing easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded and validly existing restrictions, reservations, covenants, conditions, oil and gas leases, mineral interests, and water interests outstanding in persons other than Grantor, and other instruments, other than conveyances of the surface fee estate, that affect the Property; validly existing rights of adjoining owners in any walls and fences situated on a common boundary; any discrepancies, conflicts, or shortages in area or boundary lines; any encroachments or overlapping of improvements; and taxes for the current year, which Grantee assumes and agrees to pay, and subsequent assessments for that and prior years due to change in land usage, ownership, or both, the payment of which Grantee assumes.

Grantor, for the Consideration and subject to the Restrictive Covenants, Reservations from Conveyance and the Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, and all right, title and interest of Grantor in and to adjacent streets, alleys, rights-of-way, roadways, strips and gores, easements and in-the-ground utilities, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, when the claim is by, through, or under Grantor but not otherwise, except as to the Restrictive Covenants, Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

**Noteholder**, at Grantee's request, has paid in cash to Grantor that portion of the purchase price of the Property that is evidenced by the note. The first and superior vendor's lien against and superior title to the Property are retained for the benefit of **Noteholder** and are transferred to **Noteholder** without recourse against Grantor.

GRANTEE IS TAKING THE PROPERTY IN AN ARM'S-LENGTH AGREEMENT BETWEEN THE PARTIES THE CONSIDERATION WAS BARGAINED ON THE BASIS OF AN "AS IS, WHERE IS" TRANSACTION AND REFLECTS THE AGREEMENT OF THE PARTIES THAT THERE ARE NO REPRESENTATIONS OR EXPRESS OR IMPLIED WARRANTIES, EXCEPT THOSE CONTAINED IN THE THIS DEED. GRANTEE HAS NOT RELIED ON ANY INFORMATION OTHER THAN GRANTEE'S INSPECTION AND THE WARRANTIES EXPRESSLY CONTAINED IN THIS DEED.

When the context requires, singular nouns and pronouns include the plural.

**[Signatures and Acknowledgments on Following Pages]**

**AMARILLO NATIONAL BANK,**
a national banking corporation

By: _____

Name: William Ware

Title: EVP

THE STATE OF TEXAS    §
                      §
COUNTY OF POTTER      §

        This instrument was acknowledged before me on this the 29 day of May, 2015, by William Ware [name], Executive Vice-President [title], of **AMARILLO NATIONAL BANK**, a National banking corporation, on behalf of said corporation.

LaDonna K. Bonner-Gist
NOTARY PUBLIC,
STATE OF TEXAS
My Commission Expires 05-18-2017

NOTARY PUBLIC

**Acceptance by Grantee:**

Grantee accepts this deed and consents to its form and substance. Grantee acknowledges that the terms of this deed conform with Grantee's intent and that the terms of this deed will control in the event of any conflict with the contract Grantee signed regarding the Property. Grantee agrees to the obligations imposed on Grantee by the terms of this deed.

FIVE S BUILDING LLC,
a Texas limited liability company

By: _____
Name: Justin Sharbutt
Title: Designated Agent

THE STATE OF TEXAS          §
                           §
COUNTY OF Lubbock          §

This instrument was acknowledged before me on this the 29ᵗʰ day of May, 2015, by Justin Sharbutt [Name] Designated Agent [Title] of FIVE S BUILDING LLC, a Texas limited liability company, on behalf of said company.

[SEAL]

_____
Notary Public

BRANDI NICOLE GREEN
Notary Public, State of Texas
My Commission Expires
August 20, 2017

## FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

   Renee Calhoun

2015009106
06/02/2015 01:57:47 PM
Fee: $32.00
Renee Calhoun, County Clerk
Randall County, Texas
D

**3.4**

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## WARRANTY DEED

THE STATE OF TEXAS

KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF RANDALL

THAT, **FIVE S BUILDING, LLC**, a Texas limited partnership, hereinafter called GRANTOR(S), for and in consideration of the sum of TEN AND NO/100 ($10.00) DOLLARS and other good and valuable consideration, to the said GRANTOR(S) paid by **45TH & SONCY, LLC**, a Texas limited liability company, whose mailing address is 5807 63rd St., Ste 100, Lubbock, Tx 79424, hereinafter called GRANTEE(S), the receipt and sufficiency of which is hereby acknowledged and confessed, and for which no lien, either expressed or implied, is retained; has (have) Granted, Sold, and Conveyed; and by these presents does (do) Grant, Sell and Convey, unto the said GRANTEE(S), all of the following described property, to-wit:

> SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES.

This conveyance is subject to all valid existing building and use restrictions, easements and rights-of-way of record, visible or apparent, if any, and valid reservations of oil, gas and other mineral interests, if any.

TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said GRANTEE(S), his (her) (their) (its) heirs (successors) and assigns forever.

GRANTOR(S) hereby bind(s) himself (herself) (themselves) (itself) his (her) (their) (its) heirs, executors and administrators (successors) and assigns, to Warrant and Forever Defend all and singular the said premises unto the said GRANTEE(S) and to the heirs (successors) and assigns of the said GRANTEE(S) against every person whomsoever lawfully claiming, or to claim the same, or any part thereof.

Whenever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall include all genders, whenever the context so admits.

DATED this ___5th___ day of ~~December, 2016~~ January 7

FIVE S BUILDING, LLC,
a Texas limited partnership

By: Justin Sharbutt, Designated Agent

10302-LKB.deed.wpd
120116:10:29

Page 1 of 3

STATE OF TEXAS

COUNTY OF Lubbock

    This instrument was acknowledged before me on the _____5th_____ day of December, 2016, by January 7
Justin Sharbutt, Designated Agent for and on behalf of FIVE S BUILDING, LLC, a Texas limited
partnership.



BRANDI NICOLE GREEN
Notary Public, State of Texas
Comm. Expires 08-20-2017
Notary ID 129530024

Brandi Green
Notary Public, State of Texas
My Commission Expires

GF10302-LKB/CATCO

## EXHIBIT "A"

All of Lot No. 12, in Block No. 45, of Sleepy Hollow Unit No. 71, an addition to the City of Amarillo, Randall County, Texas, according to the recorded map or plat thereof of record in Volume 1477, Page 51, of the Deed Records of Randall County, Texas,

SAVE AND EXCEPT that portion of said Lot 12 being further described by metes and bounds as follows:

BEGINNING at a 3/8" rebar with a cap marked "RPLS 4664" set in the South line of said Lot 12, whence the Southeast corner of said Lot 12 bears S 89° 47' E. (Base Bearing) for a distance of 193.41 feet to a 1/2" rebar, found;

THENCE N. 89° 47' W. along the South line of said Lot 12 for a distance of 31.47 feet to a 1/2" rebar with a cap marked "RPLS 1939" found for the most Southerly Southwest corner of said Lot 12;

THENCE N. 45° 15' 43" W. along the Southwesterly line of said Lot 12 for a distance of 23.02 feet to a 1/2" rebar with a cap marked "RPLS 1939" found for the most Northerly Southwest corner of said Lot 12;

THENCE N. 0° 40' 23" W. for a distance of 31.90 feet to a Brass cap monument, found;

THENCE S. 44° 59' 17" E. along the monumented right-of-way line of loop 335 (Soncy Road) for a distance of 68.18 feet to the POINT OF BEGINNING.

Said tract contains a computed area of 1013.7 square feet of land.

The following persons or entities: _____ **FIVE S BUILDINGS, LLC** _____
( collectively, the Grantor", whether one or more ) for the sum of _____ Ten ____ Dollars ( $ ___ 10.00 ___ ), by
this instrument, grant to SOUTHWESTERN PUBLIC SERVICE COMPANY, a New Mexico corporation ( "SPS" ), the
address of which is Post Office Box 1261, Amarillo, Texas 79170, an easement upon, under, over, and across property
owned by Grantor and located in the County of _____ RANDALL _____ , State
of _____ Texas _____ which property ( the "Property" ) is described as follows:

**Easement Description – SEE EXHIBIT "A" ATTACHED**

**Easement Sketch – SEE EXHIBIT "B" ATTACHED**

The location of any additional overhead or underground lines covered by this easement shall be agreed to by both SPS, & FIVE S BUILDINGS,
LLC, prior to construction.

The Easement granted by this instrument (the "Easement") is subject to the following conditions:

1. SPS has the right to install, operate, relocate, construct, reconstruct, add to, maintain, inspect, patrol, enlarge, repair, and
   replace Utility Facilities for the transmission and distribution of electricity upon, over, under, and across the Property
   included in the Easement and to remove Utility Facilities from the Property, and the right of ingress and egress on
   Grantor's adjacent property for the same purposes. For purposes of the Easement, the phrase "Utility Facilities" shall
   include a variable number of conductors or wires, insulators, crossarms, protective devices, meters, terminal boxes,
   transformers, structures, poles, props, guys, anchors, and other necessary and desirable devices relating to electric
   energy or communication.

2. SPS has the right to remove all trees, branches, or other obstructions which might endanger or interfere with the
   operation, safety, or efficiency of Utility Facilities on the Property on which the Easement is located.

3. SPS will install and maintain Utility Facilities on the Property on which the Easement is located according to National
   Electric Safety Code in effect at the time of installation.

4. SPS shall enjoy the rights, benefits, and privileges conveyed by this instrument only until such time as the Utility Facilities
   on the Property are abandoned and removed, at which time all right, title, and interest of SPS in the Property will revert to
   the party that then owns the Property.

5. Grantor will have the right to use the Property for any purposes consistent with the rights granted to SPS by the Easement,
   provided that any use by Grantor shall not endanger the Utility Facilities or interfere with SPS's use of the Easement.

6. SPS has the right to assign all or part of the rights it receives under the Easement. The Easement will inure to the benefit
   of SPS and SPS's successors and assigns.

7. Grantor acknowledges and agrees that the location of the Easement is based only on preliminary surveys and that the
   rights granted by this Easement shall apply to the actual location of Utility Facilities, when constructed.

8. Upon completion of construction, SPS will reasonably compensate Grantor for the actual loss of crops or damage to crops
   on the Property caused by construction of Utility Facilities on the Property. It shall be the responsibility of Grantor to
   provide compensation to any lessee of Grantor or other tenant in interest.

9. Grantor binds Grantor and Grantor's heirs, successors, and assigns to WARRANT and FOREVER DEFEND, all and
   singular, the rights granted to SPS by this instrument.

Signed on the _____ 25th _____ day of ___ April ___ , 20 16

Sign _____     Sign _____

Print Name _Justin Sharbutt_     Print Name _____

SPS Form 2605 (Distribution)
Design No.531281
W. O. # 12370216
SPS(C) FIVE S BUILDINGS, LLC

**ACKNOWLEDGEMENTS**

**FOR BUSINESSES ONLY:**

ATTEST: ______________________ GRANTOR'S NAME: ______________________

______________________ Secretary By: ______________________

STATE OF: ______________ Printed Name: ______________________

COUNTY OF: ______________ Title: ______________________

This instrument was acknowledged before me on ______________________, ______ by ______ ______________ of ______________________, ______________________, ______ ______________ corporation, on behalf of said corporation.

______________________
Notary Public, State of

**FOR INDIVIDUALS ONLY:**

STATE OF: Texas

COUNTY OF: Lubbock

Before me, the undersigned authority, as this day personally appeared Justin Sharbatt known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that ____he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 25th day of April, 2016.

JANEA PRIDMORE
MY COMMISSION EXPIRES
April 10, 2018

Janea Pridmore
Notary Public in and for Lubbock County, Texas

STATE OF: ______________

COUNTY OF: ______________

Before me, the undersigned authority, as this day personally appeared ______________________ known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that ____he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ______________ day of ______________________, ______________.

______________________
Notary Public in and for ______________ County ______________

STATE OF: ______________

COUNTY OF: ______________

Before me, the undersigned authority, as this day personally appeared ______________________ known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that ____he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ______________ day of ______________________, ______________.

______________________
Notary Public in and for ______________ County ______________

STATE OF: ______________

COUNTY OF: ______________

Before me, the undersigned authority, as this day personally appeared ______________________ known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that ____he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ______________ day of ______________________, ______________.

______________________
Notary Public in and for ______________ County ______________

**RIGHT OF WAY EASEMENT**

FIVE S BUILDINGS, LLC

TO

SOUTHWESTERN PUBLIC SERVICE COMPANY

STATE OF Texas

COUNTY OF RANDALL

I hereby certify that this instrument was filed fo record on the ______ day of ______ A.D. ______ at ______ o'clock ___ M and duly recorded in Book ______ Page ______ of Records of said county.

______________ County Clerk

By ______________ Deputy

Fee $ ______

# EXHIBIT A

## A VARIABLE WIDTH ELECTRIC EASEMENT

GRANTOR: FIVE S BUILDINGS, LLC.
GRANTEE: SOUTHWESTERN PUBLIC SERVICE COMPANY
DATE OF PREPARATION: APRIL 18, 2016

A variable width electric easement over, under and across that part of Lot 12, Block 45, Sleepy Hollow Unit No. 71, said Lot 12 being recorded in Clerk's File No. 2015009106, of the records of Randall County, Texas, said variable wide electric easement being more particularly described as follows:

Commencing at the southeast corner of said Lot 12, (said bearings and all others used in this legal description are grid, based on the Texas State Plane Coordinate System, North Zone, NAD83, all distances are ground surface values in U.S. Survey feet.)

thence N80°19'16"W, a distance of 30.41 feet, to the Point of Beginning;

thence N00°13'00"E, a distance of 5.00 feet;

thence S89°47'00"E, a distance of 20.00 feet;

thence N00°13'00"E, a distance of 221.15 feet;

thence S44°47'24"E, along the northeasterly line of said Lot 12, a distance of 14.14 feet;

thence S00°13'00"W, along the easterly line of said Lot 12, a distance of 216.15 feet;

thence N89°47'00"W, a distance of 30.00 feet, to the Point of Beginning of said variable width electric easement;

The above described variable width electric easement contains approximately 0.05 acres of land, more or less and is subject to any rights-of-way or other easements as granted or reserved by instruments of record, or as now existing across said described tract of land.

## SURVEYOR'S CERTIFICATION:

I, Gale Scott Munsell, A Texas Registered Professional Land Surveyor, hereby state and declare this Easement Survey was prepared by me or under my supervision and direction and is correct to the best of my knowledge and belief. In addition, this Easement is not a land division or subdivision of land.

_____          06/23/16
Gale Scott Munsell   RPLS No. 6308          Date:

| PROPERTY INFORMATION | | SOUTHWESTERN PUBLIC SERVICE COMPANY |
|---|---|---|
| OWNER: FIVE S BUILDINGS LLC. | EASEMENT SURVEY | 1608 SW 48th Ave., Amarillo, TX, 79109 |
| LOC: LOT 12, BLK 45, SLEEPY HOLLOW UNIT NO. 71, RANDALL COUNTY, TEXAS | | DWG: Xcel/Company+Job/Location.dwg |
| DATE OF SURVEY: | | WORK ORDER: |
| PLOTTED: APRIL 18, 2016 | | DRN BY: GSM   SHT.   02 of 03 |

# EXHIBIT B

## LOT 12, BLOCK 45, SLEEPY HOLLOW UNIT NO. 71.
### RANDALL COUNTY, TEXAS



ALLEY

10'

S44°47'24"E
14.14'

FIVE S BUILDINGS LLC,
LOT 12, BLK 45, SLEEPY
HOLLOW UNIT NO. 71.

VARIABLE WIDTH
ELECTRIC EASEMENT

N00°13'00"E
221.15'

S00°13'00"W
216.15'

S89°47'00"E
20.00'

N89°47'00"W
30.00'

N00°13'00"E
5.00'

SOUNCY ROAD

ALLEY

5.00 FOOT WIDE
SPS EASEMENT

P.O.B.

45TH AVENUE

N80°19'16"W
30.41'

P.O.C.

**BASIS OF BEARING**
Bearings are Grid, based on the Texas State Plane Coordinate System,
North Zone NAD83, all distances are ground surface values in U.S. Survey
feet.



| LEGEND |
| --- |
| FOUND SECTION CORNER |
| FOUND CORNER |



N
W E
S

SCALE 1" = 40'
0'    20'    40'    80'

| PROPERTY INFORMATION | | |
| --- | --- | --- |
| OWNER: FIVE S BUILDINGS LLC. | EASEMENT SURVEY |  **SOUTHWESTERN PUBLIC SERVICE COMPANY** |
| LOC: LOT 12, BLK 45, SLEEPY HOLLOW UNIT NO. 71. RANDALL COUNTY, TEXAS | | 600 SW 49th Ave, Amarillo, TX 79100 |
| | | DWG: Xcel/Company+Job/Location.dwg |
| DATE OF SURVEY: | | WORK ORDER: |
| PLOTTED: APRIL 18, 2016 | | DRN BY: GSM | SHT. 03 of 03 |

# FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

*Renee Calhoun*

2016010862
06/23/2016 09:24 AM
Fee: 28.00
Renee Calhoun, County Clerk
Randall County, Texas
EA