**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS – AMARILLO DIVISION**

| | | |
|---|---|---|
| **MIKE FISHER,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **2:20-CV-64** |
| | § | |
| **CITY OF AMARILLO, et al.,** | § | |
| *Defendants*. | § | |
| | § | |

**PLAINTIFF'S RESPONSE AND OBJECTION TO**
**DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) and**
**PLEA TO JURISDICTION**

COMES NOW Plaintiff, Mike Fisher filing this response and objection to the Motion to Dismiss ("Motion") and Brief in Support ("Brief") filed by Defendants Step Values, LLC d/b/a Dunkin Donuts, Fresh Burger, LLC d/b/a BurgerFi, Edit Clean LLC d/b/a Tide Dry Cleaners, Five S Buildings LLC, and 45th and Soncy, LLC ("Franchise Defendants") regarding Plaintiff's Original Complaint ("Complaint").

Summary of the Response: Defendants assert in their Brief that Plaintiff's claims should be dismissed on a variety of bases including the statute of limitations, failure to adequately plead various claims, and the alleged conclusory nature of claims. Plaintiff will herein show that Defendants have deliberately ignored the facts pled by Plaintiff in the Original Complaint, which if taken as true are the basis for legal claims and that the statute of limitations has not expired so that the claim is still valid to be presented to the court. Therefore, Defendants' motion should be denied.

# Contents

I. Legal Standard ............................................................................................................... 4
   A. Federal Rule of Civil Procedure 8(a) ................................................................... 4
   B. Federal Rule of Civil Procedure 12(b)(6) .............................................................. 4
   C. Defendants' Statute of Limitations Argument ...................................................... 5
   D. Equitable Estoppel and the Statute of Limitations ............................................... 6
   E. Public Policy Should Dictate that the Statute of Limitations Has Not Expired ........... 7
II. Plaintiff's Nuisance & Conspiracy Claims ...................................................................... 9
   F. Plaintiff successfully pled elements of private nuisance under state law .................. 9
   G. Plaintiff successfully stated a conspiracy claim. .................................................. 10
   H. Plaintiff meets §1985 conspiracy claim elements ................................................ 11
   I. Plaintiff's conspiracy claim is not conclusory. ..................................................... 13
   J. Enforcement of Restrictive Covenants ............................................................... 13
   K. Plaintiff may seek declaratory judgment, injunction, and attorney's fees ............... 14
III. Supplemental Jurisdiction ............................................................................................ 15
IV. Prayer .......................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**
*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) ............................................................ 5
*Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557, 568 n.15 (1987) ................................... 4
*Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). ................................................................. 5, 10
*Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) ................................................................... 4, 5
*City of Abilene v. Downs*, 367 S.W.2d 153, 160 (Tex. 1963) ......................................................... 8
*Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580 (Tex. 2016) ................................... 9
*Epos Tech. Ltd. v. Pegasus Techs. Ltd.*, 636 F. Supp.2d 57, 63 (D.D.C. 2009) ............................ 4
*Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) ............................. 4
*Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994) ............................................................ 11
*Holubec v. Brandenberger*, 214 S.W.3d 650 (Tex. App. 2006) .................................................... 14
*Leonard v. Eskew*, 731 S.W.2d 124, 129 (Tex. App. 1987) ........................................................... 7
*Maguire Oil Co. v. City of Houston*, 69 S.W.3d 350, 356 (Tex. App.—Texarkana 2002, pet.
    denied) .................................................................................................................................. 11, 12
*Mitchell v. Rancho Viejo, Inc.,* 736 S.W.2d 757 (Tex. App. 1987) ............................................... 13
*Morgan v. Hubert,* 335 F. App'x 466, 470 (5th Cir. 2009). ......................................................... 5, 6
*Radney v. Clear Lake Forest Cmty. Asso.*, 681 S.W.2d 191 (Tex. App. 1984) .......................... 14
*Stanley v. Schwalby*, 85 Tex. 348, 19 S.W. 264 ............................................................................. 8
*Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 9 (Tex. 1991) ................................................ 7
*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) ............................................................... 4
*Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) .................................................................. 4

**Statutes**
28 U.S.C. § 1367(c) .......................................................................................................................... 14
TEX. CIV. PRAC. & REM. CODE § 154.002 ...................................................................................... 7
TEX. CIV. PRAC. & REM. CODE §16.003 ......................................................................................... 5
TEX. PROP. CODE § 202.003 ............................................................................................................ 13
TEX. PROP. CODE § 5.006 ................................................................................................................ 14

**Rules**
FED. R. CIV. PRO. 12(d) .................................................................................................................... 6
FED. R. CIV. PRO. 12(b)(6) ............................................................................................................ 4, 5
FED. R. CIV. PRO. 8 ........................................................................................................................ 4, 5

## I. Legal Standard

### A. Federal Rule of Civil Procedure 8(a)

1.      Federal Rule of Civil Procedure 8(a) states that a complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. PRO 8(a)(2), and that "[e]ach allegation must be simple, concise, and direct." FED. R. CIV. PRO 8(d)(1). The Supreme Court has explained that a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); accord *Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557, 568 n.15 (1987) (under Rule 8, claimant has "no duty to set out all of the relevant facts in his complaint"). "Specific facts are not necessary in a Complaint; instead, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Epos Tech. Ltd. v. Pegasus Techs. Ltd.*, 636 F. Supp.2d 57, 63 (D.D.C. 2009)(citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

2.      Thus, the Federal Rules embody "notice pleading" and require only a concise statement of the claim, rather than evidentiary facts. Accordingly, Defendants' Motion would be considered properly filed only "where a plaintiff's complaint is 'unintelligab[le] (sic),' not where a complaint suffers for 'lack of detail.'" *Epos Tech.*, 636 F. Supp. 2d at 63 (citations omitted).

### B. Federal Rule of Civil Procedure 12(b)(6)

3.      A motion to dismiss under Rule 12(b)(6) is viewed with disfavor and is rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)). A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant. The Federal Rules of Civil Procedure require that each claim in a complaint include "a

short and plain statement ... showing that the pleader is entitled to relief." Rule 8(a)(2). The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (quoting *Twombly*, 550 U.S. at 570).

4. In considering a motion to dismiss pursuant to Rule 12(b)(6) the Court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

5. In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id*. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Morgan v. Hubert,* 335 F. App'x 466, 470 (5th Cir. 2009). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

C. **Defendants' Statute of Limitations Argument**

6. Franchise Defendants argue that Plaintiff's claim for a private nuisance is foreclosed based on the statute of limitations of two years according to TEX. CIV. PRAC. & REM. CODE §16.003.

7.      Franchise Defendants use a communication of January 16, 2018 as evidence that the statute of limitations has expired because the Original Complaint was not filed until March 14, 2020. This letter was attached to the Franchise Defendants' motion in an appendix.

However, FED. R. CIV. PRO. 12(d) says:

> (d) RESULT OF PRESENTING MATTERS OUTSIDE THE PLEADINGS. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

8.      Defendants are presenting matters outside to the pleadings. The Court may not consider these matters in a 12(b)(6) motion. "At this early pleading stage, our factual universe is bounded by the four corners of the complaint." *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011) If the Court wishes to consider the communication of January 16, 2018, then the motion is converted to a summary judgment motion.

9.      Franchise Defendants clearly understood this result because they try to have the Court consider documents outside the "four corners of the Original Complaint" and yet openly admit that they "do not intend for the Court to convert this Motion to Dismiss into a Motion for Summary Judgment."

**D.      Equitable Estoppel and the Statute of Limitations**

10.     Franchise Defendants assert that the Plaintiff should not be allowed to assert his private nuisance claim or conspiracy claim based on the statute of limitations because Plaintiff communicated with Franchise Defendants in January 2018 and did not file suit until March 2020. (Exhibit 1)

11.    Should the Court choose to consider the letter attached to Franchise Defendants to Motion in the Appendix, then the Court should recognize the reply to that letter attached to this Response. (Exhibit 2)

12.    Franchise Defendants responded to Plaintiff's letter by representing that they would remedy the causes of the private nuisance claim. Franchise Defendants represent that they would remedy the lighting, noise, landscaping, and grease dumping issues.

13.    The doctrine of equitable estoppel states that the Defendants are precluded from asserting the statute of limitations when they have induced the Plaintiff to not file suit because of representations they have made.

> Under the familiar rules of equitable estoppel, applicable to a whole range of conduct in numerous contexts, a defendant may be estopped to interpose the limitations bar, which would otherwise be available to him, when he has induced the plaintiff not to file suit within the limitations period. The essential elements of such estoppel are: that the defendant, by his words or conduct, induced the plaintiff to delay filing his cause of action beyond the time permitted by the applicable statute of limitations, unmixed with any want of diligence on the plaintiff's part.
>
> *Leonard v. Eskew*, 731 S.W.2d 124, 129 (Tex. App. 1987)

14.    In this case, Franchise Defendants represented by words in their letter to Plaintiff that they were remedying the issues related to the private nuisance, thus inducing the Plaintiff not to file his cause of action. He should be allowed to carry forth his case based on principles of equity.

**E.    Public Policy Should Dictate that the Statute of Limitations Has Not Expired**

15.     In the event that the Court should choose to consider the communications of January 16, 2018, an important public policy argument must also be considered. Plaintiff, in good faith, attempted to communicate with Franchise Defendants outside the doors of the courtroom to settle the dispute before asserting a claim in court.

16.    The Texas Supreme Court has said that it "seeks to promote a public policy that encourages

settlements." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 9 (Tex. 1991)

17. This policy has been codified by the Texas Legislature: "It is the policy of this state to encourage the peaceable resolution of disputes…and the early settlement of pending litigation through voluntary settlement procedures. TEX. CIV. PRAC. & REM. CODE § 154.002

18. In this case, it would be against public policy to foreclose the remedy available to Plaintiff because he sought the opportunity to reach a peaceable resolution of the dispute by trying to settle the case out of court.

19. Therefore the statute of limitations should not begin until after a reasonable time had passed allowing for Franchise Defendants to respond to his communication or drawing a reasonable inference by their silence that Defendants did not intend to remedy the nuisance producing activities.

20. "[The] statute of limitation begins to run from the time when a complete cause of action accrued - that is, when a suit may be maintained - and not until that time." It was held in *Stanley v. Schwalby*, 85 Tex. 348, 19 S.W. 264, that "[Limitation] runs upon the right or cause of action accruing, and not before; and this does not exist unless facts exist which authorize the person asserting claim to ask relief from some court of justice against the person who ought to make reparation." *City of Abilene v. Downs*, 367 S.W.2d 153, 160 (Tex. 1963)

21. In this case, Plaintiff did not know that the facts existed to seek relief from some court of justice until after the Franchise Defendants had failed to respond to or act upon the communications by Plaintiff seeking resolution outside of court.

**II.     Plaintiff's Nuisance & Conspiracy Claims**

**F.      Plaintiff successfully pled elements of private nuisance under state law**

22.     Franchise Defendants claim that Plaintiff failed to plead facts that constitute the elements of a tort of private nuisance under state law.

23.     The elements of a private nuisance are (1) Plaintiff was in lawful use or owned an interest in land. (2) Defendant interfered with use and enjoyment of land owned or occupied by plaintiff. (3) Interference was substantial and unreasonable under circumstances. (4) As a proximate cause of interference, plaintiff suffered damages. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580 (Tex. 2016)

24.     In paragraph 35 of the Original Complaint, Plaintiff plead the first element that he owns the land at issue.  Plaintiff purchased the Home located at 4410 Van Kriston Dr, Amarillo, Texas, in June of 2012.

25.     Plaintiff pled facts in the Original Complaint paragraph 39 that meet element two of the private nuisance tort by listing at least some of the actions by Franchise Defendants that interfere with the enjoyment of his property, including but not limited to brightly-illuminated signs shining through the windows of his home, oil and other liquids discarded on the ground near his in-ground pool, noise from delivery and other commercial vehicles.

26.     Plaintiff pled facts that demonstrate element three of a private nuisance by showing that the interference was substantial and unreasonable in paragraphs 40, 41, 45, and 46 of the Original Complaint.  Plaintiff's in-ground pool has become unusable much of the time due to commercial noise, bright lights at all hours, exposed wiring, and unpleasant smells and trash.  Additionally, Plaintiff's property has lost about $50,000 in value according to the county appraisal district.

27.     Element four is also met by paragraphs 40, 41, 45, and 46 of the Original Complaint by

showing that the interference by Franchise Defendants resulted in damages; his backyard pool is virtually unusable and his property value has dropped dramatically.

28. Because Plaintiff has pled facts that when taken as true "give the defendant fair notice of what the…claim is and the grounds upon which it rests," the Court should not dismiss the Plaintiff's private nuisance claims.

**G.      Plaintiff successfully stated a conspiracy claim.**

29. Franchise Defendants allege that Plaintiff's statements in his Complaint are bare assertions that don't properly plead a conspiracy claim. It is easy to label a statement "conclusory" by removing it from the context of an argument and considering it on its own. But the Plaintiff's conspiracy claim must be considered in light of the other facts presented in his Complaint, including those regarding the City's Health Department agents' disparate treatment of Plaintiff and Franchise Defendants.

30. The essential elements of a conspiracy claim are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result.

31. Plaintiff pled facts that taken as true have "facial plausibility" and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

32. Paragraph 45-64 of the Original Complaint assert facts about the parties involved in the conspiracy claim, Franchise Defendants, the City of Amarillo and its Mayor and Council members, the Wares brothers, and Amarillo National Bank.

33. The second element, the object to be accomplished, was the operation of businesses in violation of restrictive covenants on the property.

34.     The third element, the meeting of the minds, need not be proved in the Original Complaint, but the facts asserted, when taken as true, raise a fact question that should foreclose a dismissal of the claim.

35.     The fourth element, overt acts, are pled in the same paragraphs 45-64 and include failing to enforce city ordinances against the Franchise Defendants, harassment and disparate treatment of the Plaintiff's business by the City of Amarillo, and campaign contributions to city officials by the property owners that raise a question about a conspiracy.

36.     As shown in the private nuisance elements, Paragraphs 40, 41, 45, and 46 demonstrate damages done to the Plaintiff because of the conspiracy of the actors, including Franchise Defendants.

37.     Thus, considered in light of supporting facts provided in Plaintiff's Complaint, the statement made in paragraph 102 of the Complaint should not be dismissed as conclusory. This Court should allow discovery on these matters so that the allegations can be investigated. To dismiss the claim at this stage is premature; Plaintiff is not required to prove the entirety of his case in order to just file suit.

**H.      Plaintiff meets § 1985 conspiracy claim elements**

38.     Defendants allege Plaintiff's conspiracy claim must be dismissed because Plaintiff has not alleged "class-based animus."

39.     The case *Hilliard v. Ferguson* states that "a plaintiff must show that the conspiracy was motivated by a *class-based* animus." *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994)(emphasis added).

40.     However, in *Maguire Oil Co. v. City of Houston*, an oil and gas company claimed selective enforcement when the City of Houston revoked its permit to drill near Lake Houston. *Maguire Oil*

*Co. v. City of Houston*, 69 S.W.3d 350, 356 (Tex. App.—Texarkana 2002, pet. denied). In response, the City claimed the oil and gas company had not shown that it was in a protected group, and therefore was not entitled to assert an equal protection claim. *Id.* at 371. The court referenced the U.S. Supreme Court case, *Vill. of Willowbrook v. Olech*, where a municipality refused to connect a water line to a resident's property unless she granted the city a 33' easement, rather than the 15' foot easement required of her neighbors. *Id.* at 371 (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 563, 120 S.Ct. 1073, 145 L.Ed.2d 1060, 1062 (2000)). In that case, the Supreme Court recognized a cognizable equal protection claim brought by a "class of one," where the plaintiff alleged that he or she had been intentionally treated differently from others similarly situated and that there was no rational basis for the difference in treatment. *Id.*

41.     Based upon the *Olech* case, the *Maguire* Court then held that a party may be able to maintain an equal protection claim, even though he or she does not belong to a protected class. *Id.* at 371. And at the summary judgment hearing, the court held that a party must only present some evidence that he or she was intentionally treated differently than others who were similarly situated and that there was no rational basis for the differential treatment. *Id*. The *Maguire* Court then rejected the City's argument and ultimately found that a fact issue existed on the plaintiff's selective enforcement claim.

42.     In the case as in the *Maguire* case, Plaintiff asserts facts in paragraphs 44-50 of the Original Complaint to show he has been intentionally treated differently by the city of Amarillo than others similarly situated, i.e. Franchise Defendants.

43.     As such, even if this court finds that Plaintiff is not a member of a protected class, Plaintiff is still able to maintain an equal protection claim.  For this reason, Defendants' motion to dismiss for failing to sufficiently plead a §1985 conspiracy claim should be denied.

I.   **Plaintiff's conspiracy claim is not conclusory.**

44.   Defendants claim that Plaintiff's Complaint uses vague or conclusory language in Paragraphs 74, 75, 76, and 77, and for that reason, Plaintiff's conspiracy claim must be dismissed. *See* Brief 12.

45.   Here, Defendants once again choose to isolate a specific part of Plaintiff's argument with the hope that the Court will ignore context and supporting facts. Paragraphs 74-77 of Plaintiff's Complaint provide a "formalistic recitation" of the law but including such a recitation is a standard part of the process of presenting a claim, and only a problem if the analysis stops there. Such a recitation might make a claim "conclusory" if it was not supported by a factual analysis and applied to the case at hand. Fortunately, Plaintiff did not stop at such recitation.

46.   In this case, Plaintiff's "recitation" of the elements of a conspiracy claim is in fact supported by and applied to facts presented in Paragraphs 43-64 and 101-102 of the Complaint, where Plaintiff describes the unlawful cooperation of defendants in their various roles to the detriment of Plaintiff. *See* Complaint ¶¶ 43-64, 101-102.

J.   **Enforcement of Restrictive Covenants**

47.   Franchise Defendants claim that Plaintiff is not entitled to relief for enforcement of restrictive covenants.

48.   Franchise Defendants once again ignore the facts pled by Plaintiff in Paragraph 36 of the Original Complaint where the specifics of the restrictive covenants applying to the land are set forth: *See* Complaint ¶ 36.

49.   "A restrictive covenant shall be liberally construed to give effect to its purposes and intent." TEX. PROP. CODE § 202.003.

50. In this case, Plaintiff set forth the restrictive covenants affecting both his and the Defendants' property and the Court must consider those liberally. Plaintiff has standing to enforce the covenants because he has an interest in the benefitted land. *Mitchell v. Rancho Viejo, Inc.,* 736 S.W.2d 757 (Tex. App. 1987)

51. Therefore, Plaintiff's claim for enforcement of the restrictive covenants ought not to be dismissed.

### K. Plaintiff may seek declaratory judgment, injunction, and attorney's fees

52. Franchise Defendants once again alleges that Plaintiff has failed to plead underlying substantive legal claims and therefore is not entitled to declaratory relief. However, as the previous arguments have demonstrated, Plaintiff did adequately plead the private nuisance and conspiracy claims and therefore is entitled to the declaratory judgment.

53. In response to Franchise Defendants' argument that a declaratory judgment adds nothing to the relief sought, Plaintiff disagrees. Plaintiff seeks the Court's declaration that Defendants have violated of the restrictive covenant of the land and the rights guaranteed citizens of Texas under Article I, § 3 (failing to provide equal protection of the law) and § 19 (depriving plaintiffs of their property).

54. An injunction is the proper relief to seek for enforcement of a restrictive covenant and can also be appropriate in a nuisance suit. *Radney v. Clear Lake Forest Cmty. Asso.*, 681 S.W.2d 191 (Tex. App. 1984). *Holubec v. Brandenberger*, 214 S.W.3d 650 (Tex. App. 2006). In an Original Complaint, the Plaintiff need not prove all the elements for the injunctive relief, but must plead the facts that, if construed in a manner favorable to Plaintiff, demonstrate that injunctive relief would be appropriate. Plaintiff has done so. Therefore Plaintiff's plea for injunctive relief ought not be dismissed by the Court.

55. In seeking enforcement of the restrictive covenants on the land, Plaintiff is entitled to seek attorney's fees according to the Texas Property Code.

56. In an action based on breach of a restrictive covenant pertaining to real property, the court shall allow to a prevailing party who asserted the action reasonable attorney's fees in addition to the party's costs and claim. TEX. PROP. CODE § 5.006

### III. Supplemental Jurisdiction

57. Franchise Defendants claim that the Court should decline to exercise its supplemental jurisdiction over state law claims, citing 28 U.S.C. § 1367(c). However, the Franchise Defendants never point to which section of that statute applies in this case. Plaintiff has filed suit to address the claims he has against the Franchise Defendants and is seeking relief from this Court. Plaintiff prays that this Court will resolve both the federal and state claims arising between Plaintiff and Franchise Defendants.

### IV. Prayer

Plaintiff Mike Fisher prays that this Honorable Court deny Defendants' Motion to Dismiss, and for all other relief, both general and special, at law and in equity, to which he justly may be entitled.

    Respectfully submitted,

    NORRED LAW, PLLC
    /s/ Warren V. Norred
    Warren V. Norred, Texas Bar No. 24045094; wnorred@norredlaw.com
    C. Chad Lampe, Texas Bar No. 24045042; chad@norredlaw.com
    515 E. Border Street; Arlington, Texas 76010
    Tel. (817) 704-3984; Fax. (817) 524-6686
    Attorney for Plaintiffs

CERTIFICATE OF SERVICE - I certify that the above was served on all parties seeking service in the instant case via the Court's e-file system on June 4, 2020.

    /s/Warren V. Norred

# BURDETT MORGAN WILLIAMSON & BOYKIN
LLP | ATTORNEYS AT LAW

**SAMUEL S. KARR**
skarr@bmwb-law.com

Legal Assistant:
April Neely
aneely@bmwb-law.com

January 16, 2018

Writer's Information:

701 South Taylor, Suite 440
Amarillo, TX 79101
Phone: 806.358.8116
Fax: 806.350.7642

<u>VIA CERTIFIED MAIL #9214 8901 0661 5400 0118 1372 74</u>
<u>AND REGULAR U.S. MAIL</u>
45TH & Soncy, LLC
5807 63rd Street, Suite 100
Lubbock, Texas 79424

Re:   Lot 12, Block 45, Sleepy Hollow Unit No. 71, an Addition to the City of Amarillo, Texas (the "Property")

Dear Sir or Madame:

Please be advised that this firm has been retained by Mr. Fisher, the owner of 4410 Van Kriston Drive, Amarillo, Texas. You are receiving this letter because the real property records of Randall County, Texas reflect that you are the owner of the Property.

As you should be aware, the Property is located in Sleepy Hollow Unit No. 71. As such, the Property is subject to the Covenants and Restrictions filed by Ricky Culp Developers, Inc. on August 26, 1993 at Volume 1490, Page 44, as amended by that Petition for Amending Restrictions of Sleepy Hollow Unit #71 filed on October 15, 2004 as Instrument No. 0422029 of the Official Public Records of Randall County, Texas. Copies of both the Covenants and Restrictions and the Petition are enclosed herein. The purpose of this letter is to provide written notice to you that you or your tenants are in violation of the Covenants and Restrictions and to make demand that you cure the violations.

Upon review of the Covenants and Restrictions, you will note that paragraph 1.(e) specifically states that other than one professional sign not to exceed one square foot in size, no signs of any kind shall be displayed to the public view on any lot. As of the date of this letter, the three businesses operating on the Property have multiple violations of the prohibition on signs. As the owner of the Property, it is your obligation to ensure the use of the Property does not violate the Covenants and Restrictions.

Additionally, paragraph 1.(c) states that no noxious or offensive trade or activity shall be carried on upon any of the premises nor anything be done thereon which may become an annoyance or a nuisance to the neighborhood. Currently, there are multiple activities on the Property that we contend are an annoyance or a nuisance. First, several of the prohibited signs are visible from my client's residence. Further, these same signs are lighted. Therefore, at night these signs illuminate my client's backyard and living space. Second, several of your tenants have order boards or other speakers that are directed toward my client's residence. Depending on the nature of use, my client is

---

| Amarillo National Bank Plaza 2 Office | Happy State Bank Office | Lubbock Office |
|---|---|---|
| 500 South Taylor, Suite 900 | 701 South Taylor, Suite 440 | 7602 University, Suite 203 |
| Amarillo, Texas 79101 | Amarillo, TX 79101 | Lubbock, TX 79423 |

Exhibit 1                                                                  002

subjected to noise from these speakers at all hours of the day and night. Third, you or your tenants have installed lights around the perimeter of the Property and on the buildings that are casting light into my client's backyard and living space during the nighttime hours. Fourth, your tenants have a grease disposal container that has been placed on the Property line near my client's residence. Even if such were used properly, the noxious odor from the grease from the container would constitute a violation. Unfortunately, your tenant has been dumping grease on the ground around the container and leaving the container open. This has led to an increase in the number of flys, etc. that are around the area. As seen in the photos included herewith, your tenant is taking no steps to keep the area around the grease container or trash bins in a condition that would meet the standards of the Covenants and Restrictions.

Demand is hereby made that you take immediate steps to remedy the violations of the Covenants and Restrictions. Specifically, demand is made that you (i) shut off or re-direct all light sources on your Property that cast light onto my client's property; (ii) take down or cause your tenants to take down all signs, except for one 1 X 1 sign; (iii) move the grease trap located on the property line; (iv) cause the tenants to keep refuse and grease in the proper receptacles; and (v) turn off or turn down all outdoor speakers.

If proper actions have not been taken by February 8, 2018, my client has instructed me to file suit to enforce the Covenants and Restrictions.

Very truly yours,

Burdett, Morgan, Williamson & Boykin, L.L.P.

Samuel S. Karr

SSK:an
Enclosures

xc: Mr. Michael Fisher

Exhibit 1     003



Traci D. Siebenlist

tsiebenlist@cdmlaw.com

Telephone: (806) 762-5281
Facsimile: (806) 762-3510

**CRENSHAW DUPREE & MILAM, L.L.P.**
Attorneys at Law

Happy State Bank Building
4411 98th Street, 4th Floor
Lubbock, Texas 79424
P.O. Box 64479
Lubbock, Texas 79464-4479

February 7, 2018

<u>VIA EMAIL – skarr@bmwb-law.com</u>
<u>& FACSIMILE (806) 350-7642</u>
Samuel Karr
701 South Taylor, Suite 440
Amarillo, Texas 79101

Re:   45th & Soncy, LLC; Lot 12 Block 45, Sleepy Hollow Unit No. 71

Dear Mr. Karr:

Please be advised that this firm represents 45th & Soncy, LLC. We are in receipt of your letter dated January 16, 2018 concerning Sleepy Hollow Unit No. 71 in Amarillo, Texas. I attempted to reach out to you by phone prior to sending this letter, however, I was unable to reach you. This letter is to advise you of the actions taken to address concerns raised in your January 16th letter.

First, in regards to the commercial sign located nearest to your client's property. This sign no longer illuminates to accommodate your concerns regarding light on your client's property. Additionally, the speakers you addressed and mentioned in your letter are not currently in use, therefore, the noise from these speakers you mentioned should no longer be an issue. To the extent our client uses said speaker in the future, they will ensure a reasonable level of sound is employed. You also mentioned issue with the lights around the perimeter of the property casting light into your client's backyard. Our clients worked with city zoning officials and shortened these lights to ensure the lights did not cause a problem for your client. Additionally, these lights were directed away from your client's property and therefore do not cast light into the backyard or living space of your client. Additionally, the grease disposal container mentioned in your letter is not on the property line, it is inside the property line of our clients. While there may have been one issue in regards to grease around the container, this has been addressed and corrected so that there is no issue with dumping grease on the ground at this time. Additionally, our client has taken steps with the landscaping around the property and your client's property line to address said issues as requested by your client.

As you can see, while we have never been notified of a violation of any applicable city or county ordinaces, our clients have taken numerous steps to address the issues raised in your January 16th letter. Our clients would like to continue to work with you and your client to discuss

492305v.1 004725/0072738

Exhibit 2

Samuel Karr
February 7, 2018
Page 2

---

any issues in a reasonable manner. On that note, I would like to specifically talk with you concerning the signage issue you raised in your January 16th letter to determine if we can reach an amicable solution. We believe the sign provision was never intended to be applied to commercial property. Please contact me when you are available so that we can discuss this issue and hopefully avoid costly and timely litigation.

Very truly yours,

Traci D. Siebenlist

TDS/ems

cc:

Jack McCutchin, Jr. [of the firm]

492305v.1 004725/0072738

Exhibit 2