UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS – AMARILLO DIVISION

| | | |
|---|---|---|
| MIKE FISHER,<br>*Plaintiff,* | § § § | |
| v. | § | 2:20-CV-64 |
| CITY OF AMARILLO, et al.,<br>*Defendants.* | § § § § | |

## PLAINTIFF'S RESPONSE TO ANB DEFENDANTS' MOTION FOR SANCTIONS

Plaintiff Fisher herein responds to *Amarillo National Bank, Richard Ware, and William Ware's Motion for Sanctions* ("Motion")

Summarizing, the ANB-related defendants - Richard Ware, William Ware, and Amarillo National Bank ("ANB Defendants") - allege that sanctions should be awarded against Plaintiff because the allegations against them are outrageous.

Plaintiff here points out the fact that litigants are outraged at allegations made against them brings no support for sanctions. Additionally, corrupt civic "leaders" conspire with elected officials so often that the State of Texas has an entire commission to oversee such activities. In fact, corrupt bank owners are so common that they figure prominently in popular literature and film as completely believable plot points. Thus, the umbrage expressed in the Motion and the vaguely-defined relief sought therein warrant this Court's denial, if for no other reason than because the Motion offers no supporting evidence for its counter-assertions.

## I.   BACKGROUND

1.  Plaintiff Mike Fisher filed his *Original Complaint* ("Complaint") in this case on March 14, 2020, alleging several tortious actions on the part of Defendants Amarillo National Bank, Richard Ware, and William Ware (collectively "ANB Defendants"). Fisher therein alleged that the Wares use their power and influence with Amarillo's city council members so as to obtain favors and special treatment in their interests.

2.  In response to Plaintiffs' filing, ANB Defendants filed their *Motion for Sanctions* ("Motion") on July 14, 2020, essentially arguing that Fisher's theory is too outlandish to consider seriously.

## II.   ARGUMENT AND AUTHORITIES

3.  ANB Defendants provide several conclusory allegations in an attempt to convince this Court that Fisher and his attorney (together, "Plaintiff") have violated Rule 11(b) and deserve to be sanctioned. But this Court will find that Plaintiff has wholly satisfied the requirements of 11(b) and ANB Defendants' allegations have no merit.

4.  Without providing any evidentiary support, ANB Defendants claim that Plaintiff's allegations are untrue. But Rule 11(b) does not provide for the issuance of sanctions in the case that a litigant simply disagrees with the allegations of another party.

5. ANB Defendants claim that "[Plaintiff] knew that the allegations had no evidentiary support and had no basis to believe that they would likely have evidentiary support after discovery." Motion at 1. Contrary to this conclusory assertion by Defendants, Plaintiff made his allegations in good faith and with the belief that he did and will have necessary evidentiary support.

6. The Fifth Circuit has held that "in determining compliance *vel non* with each [Rule 11] obligation, the standard under which an attorney is measured is an objective, not subjective, standard of reasonableness under the circumstances." *Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796, 802 (5th Cir. 2003). In order to determine a party's objective, rather than subjective, intent, a court should look to objectively ascertainable circumstances, for example, excessive filing. *FDIC v. MAXXAM, Inc.*, 523 F.3d 566, 586. Plaintiff has done nothing before this Court to create what could constitute an objectively ascertainable circumstance in violation of Rule 11(b).

7. ANB Defendants have failed to allege that Plaintiff's representations to this Court are being presented for an improper purpose, are unwarranted by existing law or non-frivolous argument, do not have or cannot have evidentiary support, or in the case of denials of factual contentions, are not reasonably based on belief or a lack of information. *See* FED. R. CIV. P. 11(b)(1)-(4).

### III.     MISBEHAVIOR OF COMMUNITY BANKS IS COMMON

8.     Noting opposing counsel's response of outrage, one might believe that no bank owners or long-time civic insiders have ever been caught doing anything wrong while developing property.

9.     Plaintiff notes that those involved in "helping" to develop an area are often assisted by economic development grants, tax exemptions, and adjustments to regulatory requirements, often just before or following a city council election, and old-fashioned cash payments sometimes known as bribery. These payments are often given as what is known as "campaign contributions" in the common vernacular.

10.    Of course, not every contribution to an elected office holder is a bribe, but records of such activities are not difficult to find:

   a. For example, two months ago, the Department of Justice charged five members of the Toledo City Council in a bribery and extortion scheme not far removed from the allegations here.[1]

   b. In a similar case in Los Angeles, a council member was indicted for taking bribes and campaign donations in exchange for getting high-rise projects through the city's approval process.[2]

---

[1] https://www.justice.gov/usao-ndoh/pr/five-charged-toledo-city-council-bribery-and-extortion-scheme.
[2] https://abc7.com/jose-huizar-indicted-indictment-investigation/6343858/.

    c. A Cincinnati City Councilwoman was arrested in February of this year on federal charges of wire fraud, bribery and attempted extortion for what authorities say was an attempt to sell her council vote to support a proposed land swap for construction of a music venue for a developer.[3]

11.    Perhaps the ANB Defendants want to assert that ordinary businesses may be involved in such unsavory activity, but that no tale of bribery could credibly touch bank owners. Plaintiff asserts that a stronger argument is that bankers are the worst offenders. Again, examples abound.

    a. This February, a federal grand jury indicted a former CEO of Cecil Bank (a community bank in Maryland) for conspiracy to commit bank fraud, bank fraud, receipt of a bribe by a bank official, false statements in bank records, and false statements to a bank examiner, in connection with an alleged straw purchase of a home upon which the bank had foreclosed.[4]

    b. And in New York last year, the CEO of Noah Bank (another community bank) was arrested for self-dealing and taking bribes in connection with SBA-guaranteed loans to companies in which the CEO had an interest.[5]

---

[3] https://www.cincinnati.com/story/news/politics/2020/02/25/source-said-tamaya-dennard-arrested-fbi/4867235002/. These types of stories are common, see also the tale of Carolyn Davis in Dallas, https://www.justice.gov/usao-ndtx/pr/dallas-city-council-member-carolyn-davis-pleads-guilty-accepting-bribes.

[4] https://www.justice.gov/usao-md/pr/former-president-cecil-bank-facing-federal-indictment-bank-fraud-conspiracy-receiving

[5] https://www.justice.gov/usao-sdny/pr/bank-ceo-arrested-taking-bribes-connection-loans-guaranteed-small-business

12.     Plaintiff has alleged serious misbehavior in his allegations, and will dutifully seek discovery to either prove or dismiss those allegations. But a bank cannot effectively assert that it and its owners are beyond suspicion in the era of "too big to fail" bank bailouts and the attendant books and films that have forced us to recognize the horrible truth that bank owners are not free from original sin.

## IV.   CONCLUSION AND PRAYER

ANB Defendants find Fisher's contentions subjectively unreasonable, which they may find unfortunate, but that is not the standard by which Rule 11 measures reasonableness. ANB Defendants have failed to demonstrate any violation of Rule 11(b) by Fisher, or even articulated a colorable action that could be said to violate Rule 11 beyond the conclusory "he knows that's not true" brand of assertion. Thus, ANB Defendants' Motion for Sanctions should be denied, and Plaintiff respectfully requests that denial.

        Respectfully submitted,

        NORRED LAW, PLLC
        /s/ Warren V. Norred
        Warren V. Norred, Texas Bar No. 24045094
        wnorred@norredlaw.com
        C. Chad Lampe, Texas Bar No. 24045042
        chad@norredlaw.com
        515 E. Border Street; Arlington, Texas 76010
        Tel. (817) 704-3984; Fax. (817) 524-6686
        Attorney for Plaintiff

CERTIFICATE OF SERVICE - I certify that the above was served on all parties seeking service in the instant case via the Court's e-file system on August 3, 2020.

<u>/s/Warren V. Norred</u>