

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MIKE FISHER, | § | |
| Plaintiff, | § § § | |
| v. | § | 2:20-CV-64-Z |
| CITY OF AMARILLO, *et al.*, | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the Defendants' respective Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6) and the relevant briefs and memoranda in support. *See* ECF Nos. 76, 77, 79, 80, & 81. Having reviewed the applicable law and all relevant pleadings, the Court finds all of Plaintiff's federal claims are DISMISSED WITH PREJUDICE, and his Texas state-law claims are DISMISSED WITHOUT PREJUDICE because the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367.

### FACTUAL BACKGROUND

This is an action by Plaintiff Mike Fisher ("Plaintiff") under 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and Texas law against Defendants City of Amarillo ("City"); five of its elected officials: Mayor Ginger Nelson and City Council Members Elaine Hays, Eddy Sauer, Freda Powell, and Howard Smith (collectively the "Council Defendants"); Amarillo National Bank and its owners Richard and William Ware (collectively "ANB Defendants"); and a variety of incorporated entities[1] associated with a commercial strip center located at 4411 Soncy Road, Amarillo, TX.

---

[1] Defendants Step Values, LLC, Fresh Burger, LLC, and Edit Clean, LLC, are domestic limited liability companies who franchise a Dunkin' Donuts, BurgerFi, and Tide Dry Cleaners, respectively (collectively the "Franchise Defendants"). Defendants Dunkin Brands, Inc., BurgerFI International, LLC, and The Proctor & Gamble Company are corporate franchisors for those same businesses (collectively the "Franchisor Defendants"). Defendant Five S

Plaintiff asserts both federal constitutional and Texas state-law claims arising from the City's failure to enforce and prosecute violations of certain restrictive covenants and nuisance ordinances against the owners and operators of commercial strip center.

According to Plaintiff's First Amended Complaint ("Amended Complaint"), he owns a lot adjacent to 4411 Soncy Rd in Amarillo, Texas. When Plaintiff purchased this lot in 2012, the adjacent property was undeveloped and owned by Defendant ANB. Plaintiff purchased his home with the understanding that the adjacent property was burdened by restrictive covenants that disallowed certain activities and, if followed, would benefit Plaintiff's use and enjoyment of his property.

The events that precipitated this lawsuit began in 2015, when Defendant ANB sold the property to Defendant Five S, which developed the property as a commercial strip center with several suites available for lease. Five S sold the property to Defendant 45th in January of 2017 and, in May of 2019, Defendant 45th sold the property to Defendant Plaza Amarillo who subsequently decided leased to the Franchisor and Franchise Defendants. The Franchise Defendants currently operate a Dunkin' Donuts, a BurgerFi, and a Tide Dry Cleaners out of the commercial strip center.

Plaintiff's original warranty deed, Exhibit "A" filed with Plaintiff's Original Complaint (ECF No. 1), establishes that "all lands and lots shown by the Plat of Sleepy Hollow Unit 71 . . . shall be used for residential purposes except that only Lot 12 in Block 45 may be used for commercial or other use." Plaintiff alleges additional restrictive covenants that are located in the property records of Randall County encumber the Sleepy Hollow subdivision and the property,

---

Buildings LLC ("Defendant Five S") and Defendant 45th and Soncy, LLC ("Defendant 45th") are holding companies that formerly owned the property at 4411 Soncy. Defendant Plaza Amarillo, LLC ("Defendant Plaza Amarillo") is a limited liability company that currently owns the property.

including "a prohibition on trade which may become an annoyance to the neighborhood." ECF No. 75 ¶ 35.

Following commercial development of the property, Plaintiff alleges the operation of the Dunkin' Donuts, BurgerFi, and Tide Dry Cleaners has created several chronic nuisances including: "brightly-illuminated signs," "oil and other liquids discarded on the ground hear (sic) his in-ground pool," "noise from commercial vehicles," and "numerous other nuisances which particularly disturb his home life and that of his neighbors." *Id.* ¶ 42. He attributes these damages to the commercial activity of the Franchise Defendants, and claims, based on Potter-Randall County Appraisal District assessments, his home has decreased in value from $340,652 to $290,904 due to the Franchise Defendant's actions. *Id.* ¶ 44.

Plaintiff has complained to the City of Amarillo ("the City") about the continuing nuisances and the alleged violation of the restrictive covenants located in his deed and in the Randall County property records. According to the Amended Complaint, the City has largely ignored his complaints and "refused to enforce its rules," causing further anguish. Plaintiff cites a particular episode on January 2, 2019, where he complained to the City about unsanitary conditions related to the commercial strip mall. City inspectors observed the conditions and instructed the Franchise Defendants to "have the area cleaned up in a few days." ECF No. 75 ¶ 54. According to the Complaint, the City responded by inspecting the BurgerFi and instructing the Franchise to clean up the affected area. *Id.* ¶ 55. Plaintiff complains that the City's approach was "lackadaisical." *Id.* ¶ 55.

Meanwhile, Plaintiff avers the City has taken aggressive enforcement actions against similarly situated businesses. In support of this claim, Plaintiff contrasts inspection of the Franchise Defendants in response to his January 2019 complaint, to three separate interactions

3

with City and County officials, which he believes are related to his complaints about the nuisance near his property. First, Plaintiff describes a City inspection of his own business in February 2019, where inspectors from the City's Health Department visited Plaintiff's business three times: first to give notice of a pending violation for an uncapped septic system on the property, second to leave a Notice of Violation concerning the system, and third to conduct an inspection of the system pursuant to a valid warrant. *Id.* ¶ 56-57. Plaintiff concedes the City took no action following the inspection of his sewer system. *Id.* Second, Plaintiff alleges he was arrested by Randall County officials, who are not City employees, for violating the "Clean Air Act." *Id.* ¶ 58. Third, and last, Plaintiff alleges the City shut down another restaurant in Amarillo for an unspecified violation relating to its oven vent. *Id.* ¶ 59.

According to Plaintiff, the City treated the Franchise Defendants differently from his business and the other restaurant because of a tacit and illegal agreement between all Defendants named in the Amended Complaint. Plaintiff specifically theorizes that the ANB Defendants sold the property to "friendly buyers" with the promise that the ANB Defendants' political power and influence with the City and Council Defendants would protect subsequent owners of the commercial strip center any tenants from enforcement actions by health inspectors or other City officials. *Id.* ¶ 116. The results of this tacit agreement are the ongoing nuisances and violations of certain restrictive covenants, which have caused Plaintiff's home to lose value.

Based on the foregoing allegations, Plaintiff brings multiple claims against Defendants under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and Texas state law. Under federal law, Plaintiff claims the City and Council Defendants' actions constitute (1) deprivation of due process, (2) failure to provide equal protection under the law, and (3) a Fifth Amendment regulatory taking. He also claims (4) all the Defendants engaged in a conspiracy to deprive him of his civil rights under

4

Section 1985(3) by "cooperat[ing] in such a way that Plaintiff was damaged with a substantial loss of home value." ECF No. 75 ¶ 114. Plaintiff brings additional claims under Texas law for violations of restrictive covenants, civil conspiracy, continuing private and public nuisance, and various declaratory judgments.

## JURISDICTION

The Court has subject-matter jurisdiction over Plaintiff's constitutional claims under 28 U.S.C. § 1331. It has the power to exercise supplementary jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

## LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 555 (internal marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal marks omitted).

The Court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). After assuming the veracity of any well-pleaded allegations, the Court should then "determine whether they plausibly give rise to an entitlement of relief." *Id.* "The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a 'probability requirement,' but 'a sheer possibility that a defendant has acted unlawfully' will not defeat a motion to dismiss." *Hong Kong Aroma Star Int'l LLC v. Elta MD Inc.*, 3:18-CV-2228-G, 2019 WL 2357529, at *2 (N.D. Tex. June 4, 2019) (Fish, J.) (quoting *Ashcroft* 556 U.S. at 679). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief." *Id.* (internal marks omitted). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "A court may also consider documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims." *Harris v. Meridian Sec. Ins. Co.*, 4:19-CV-00507-P, 2019 WL 5457027, at *3 (N.D. Tex. Oct. 24, 2019) (Pittman, J.) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

ANALYSIS

A. Plaintiff's Federal Claims

The Court first considers Plaintiff's Section 1983 claims for violations of his due process, equal protection, and Fifth Amendment rights; as well as his Section 1985(3) conspiracy claim.

*1. Due Process*

Plaintiff alleges that the City of Amarillo and the Council Defendants violated his constitutional right to due process by "repeatedly harassing" him over "non-existent" violations of municipal ordinances by his business. ECF No. 75 ¶¶ 109–111. Relying on *Monell v. Dept. of Soc. Serv. of New York*, 436 U.S. 658 (1978), the City and Council Defendants argue that Plaintiff cannot maintain this claim against the City because he has not adequately alleged that the City can be liable for its employees' actions with respect to Plaintiff's business. ECF No. 81 at 11. Plaintiff responds that his Complaint meets the *Monell* standard. ECF No. 87 at 6–7.

Section 1983 provides a cause of actions against any "person" who, under the color of law, deprives another of a constitutional or federal statutory right. 42 U.S.C. § 1983. Municipalities and local governments qualify as "persons" under Section 1983 but may not "be sued under [section] 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). "Instead, municipal liability under Section 1983 'results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy'." See *Bryan v. City of Dallas*, 188 F. Supp. 3d 611, 616 (N.D. Tex. 2016) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)). "A claim for municipal liability under section 1983 has three elements: (1) 'a policymaker'; (2) 'an official policy'; and (3) 'a violation of constitutional rights whose moving force is the policy or custom'." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010).

7

Plaintiff's Amended Complaint fails the first two prongs of the *Monell* test. First, Plaintiff has failed to identify a municipal policymaker who could be held responsible, through actual or constructive knowledge, for enforcing a policy that caused Plaintiff's alleged injuries. *See Piotrowski*, 237 F.3d at 579 (holding that the identification of a specific policymaker is "not an opaque requirement"). Plaintiff claims that the Amended Complaint identifies "the City" as a policy-making municipal body in Paragraphs 43 through 50[2] and 53 through 59.[3] ECF No. 87 at 7 (citing ECF No. 75). But the City and Council Defendant's "cannot be liable for an unwritten custom unless 'actual or constructive knowledge of such a custom' is attributable to a city policymaker." *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018). Here, Plaintiff's complaint invites no more than speculation that any particular policymaker, be it the Mayor, City Councilmen, or other City of Amarillo officials, knew about the alleged custom or practice resulting in (1) the City declining to cite Franchise Defendants for violations of various ordinances, or (2) the inspection of Plaintiff's business for an uncapped septic system. *Id.* Thus, Plaintiff's Amended Complaint has failed to meet the *Ashcroft* plausibility standard on this claim.

Nor has Plaintiff identified an "official policy" or custom that was the moving force behind the alleged due process violations. To proceed beyond the pleading stage, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Pena*, 879 F.3d a 622 (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997). "Official policy establishes culpability and can arise in various forms. It usually exists in the form of written policy

---

[2] Contrary to the assertions in Plaintiff's Response and Objection to Defendant's Renewed Motion to Dismiss (ECF No. 87), Plaintiff does not mention "the City" a single time in Paragraphs 43-50 of the First Amended Complaint nor does he describe the City's pattern of ignoring health code violations.

[3] Plaintiff fails to identify a single culpable employee of the City of Amarillo in these paragraphs. Instead, he interchangeably uses the terms "the City" and "the City Health Department" to describe a single culpable entity. Plaintiff does identify one individual who works for Randall County, which is *not* the City of Amarillo or one of its agencies.

statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). Where prior incidents are used to prove a widespread practice, the incidents "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Id.* at 850.

Here, Plaintiff does not allege a formal or written policy by the City. Instead, he contends the City's response to a continuing nuisance near his home and its investigation of Plaintiff's own business represent a persistent practice of City employees "based on political considerations, rather than the reasonable exercise of its police power and consideration of its taxpayers' rights." ECF No. 75 ¶ 52. However, the investigation of one sanitary sewer violation by City employees at Plaintiff's business pursuant to a valid warrant is not a pattern "so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Nor is Plaintiff's arrest by a Randall County official evidence of a pattern because Randall County and the City of Amarillo are not the same governing body. Notably, Plaintiff did not sue Randall County. Finally, Plaintiff's allegation that the City closed a similarly situated restaurant he did not own for violation of an unspecified ordinance does not implicate his due process rights. Because the facts alleged in the Amended Complaint do not meet the *Ashcroft* plausibility standard of the "policy or custom" prong of the *Monell* test, Plaintiff's claim fails. *Monell*, 468 U.S. at 694.

Accordingly, Plaintiff's Section 1983 claim for a violation of due process fails to identify a policymaker or policy connected to the alleged violations. *Id.* Therefore, the Court DISMISSES this claim WITH PREJUDICE.

*2. Equal Protection*

Plaintiff alleges a violation of his constitutional right to equal protection under 42 U.S.C. § 1983. Specifically, he claims that the City did not enforce its nuisance ordinances against the commercial strip mall near his property after he complained but did search his similarly situated business for uncapped sewer lines. "By its pattern of harassing Plaintiff and failing to exercise its police powers in a selective manner so that a continuing nuisance is allowed to flourish while plaintiff is repeatedly harassed over non-existent property violation on property outside Amarillo city limits, the City has [failed] to provide equal protection under its laws." ECF No. 75 ¶ 110.

Defendants contend that Plaintiff has not adequately pleaded its liability under the *Monell* framework previously discussed. They also contend that the claim must be dismissed as to all Defendants because the First Amended Complaint asserts a selective enforcement theory but fails to allege (1) disparate treatment, (2) improper motivation or discriminatory intent, or (3) lack of rational basis. ECF No. 81 at 81–82 (*citing Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Plaintiff responds that the City's failure to cite the Franchisee defendants for "the refuse littering the property" and its "aggressive posture" toward his business without justification is *per se* evidence that he was "intentionally . . . treated different[ly] without rational basis for the treatment" ECF No. 87 at 8.

Assuming for the sake of argument that Plaintiff's First Amended Complaint satisfies *Monell* as to his equal protection claim, his failure to allege any disparate treatment, improper motivation, or lack of rational basis for Defendants' alleged selective enforcement of City ordinances is still fatal. *Village of Willowbrook*, 521 U.S. at 564. A Section 1983 plaintiff must show that "a state actor intentionally discriminated against [him] because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). A successful equal

protection claim, however, may be brought by a "class-of-one" where a plaintiff alleges he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook*, 528 U.S. at 564. Plaintiff has failed to adequately plead any of the elements required for a "class-of-one" equal protection claim.

Here, Plaintiff has failed to allege that his business was treated differently from those of the Plaza Amarillo, the Franchisee Defendants, and the Franchisor Defendants. His claims relate to an investigation of his business by the Amarillo Area Public Health District relating to allegedly uncapped sewer lines on the property. Plaintiff claims that City Health Inspectors left a Notice of Violation and conducted a subsequent inspection of Plaintiff's property acting on behalf of the District that ultimately resulted in no citations or fines. ECF No. 75 ¶¶ 56–57. Plaintiff alleges City inspectors conducted their investigation of his sewer lines pursuant to a valid search warrant. *Id.* at ¶ 57. Plaintiff claims that this inspection represents intentionally differential treatment vis-a-vis the Defendants because the City took "minimal" action in response to Plaintiff's complaints against the commercial strip mall west of his home. Id. at ¶ 57. The most glaring defect here is that Plaintiff does not allege disparate treatment. Even assuming Plaintiff's business is "similarly situated" to those in the commercial strip center, the City inspectors issued zero cumulative citations after inspecting both businesses. These facts do not give rise to a "plausible" claim for disparate treatment, so Plaintiff's claim fails.

Further, Plaintiff has not even alleged that his business is "similarly situated" to the businesses operated by the Franchise Defendants. While "there is no precise formula to determine whether an individual is similarly situated to comparators," the Amended Complaint provides no details from which the Court could reach that conclusion. *See Lindquist v. City of Pasadena, Tex.*, 669 F.3d 225, 234 (5th Cir. 2012) (stating that Courts must consider "the full variety of factors

that an objectively . . . reasonable decisionmaker would have found relevant in making the challenged decision" in determining whether comparators are "similarly situated"). Information that might have assisted the Court could have been the respective ordinances that the businesses allegedly violated, the type of business Plaintiff operated, and the information contained in the Search Warrant executed against that business. *Id.* However, because the Amended Complaint alleges no facts on this element, the equal protection claim fails.

Finally, none of Plaintiff's allegations demonstrate that "the defendant deliberately sought to deprive [Plaintiff] of the equal protection of the laws for reasons of a personal nature unrelated to the Defendant's position," which is a requirement for a "class of one" claim based on personal animus. *Mata v. City of Kingsville*, 275 Fed. Appx. 412, 415 (5th Cir. 2008) (unpublished). Here, Plaintiff makes conclusory allegations that some businesses, including his own, are treated differently from other businesses in Amarillo because their owners have not made political contributions to city councilmembers or the mayor in exchange for regulatory leniency. See ECF No. 75 ¶¶ 60–73. The purported conspiracy, if it did exist, might explain the alleged disparate treatment, and would not provide rational basis for it, thereby satisfying the second and third elements of a "class of one claim." *Village of Willowbrook*, 528 U.S. at 564. But Plaintiff's conspiracy theory is short on detail and does not rise above the level of conclusory allegations. *See e.g.* ECF No. 75 ¶ 116 (Plaintiff asserts that "ANB and the Wares needed to unload a commercial property that was difficult to sell. Rather than lower its price, the bank sold the property to friendly buyers with the promise that the Wares' political power would protect it from any enforcement. After all, it's a community bank that gives to many civic causes and as the most significant player in city affairs, few people gain political power outside the Wares and the hivemind of friends that runs the city which is no different from most cities") (internal marks omitted). *See Ashcroft*, 556

U.S. at 679 (stating that a "sheer possibility" that Defendants acted unlawfully is insufficient to overcome a Motion to Dismiss). Accordingly, the Complaint does not adequately plead this element to survive Defendants' Motions to Dismiss.

Because Plaintiff has failed to plead facts supporting a Section 1983 claim for violation of equal protection under the law, his claim is DISMISSED WITH PREJUDICE.

*3. Fifth Amendment Takings*

Plaintiff alleges under 42 U.S.C. § 1983 that the City's failure to enforce nuisance ordinances against the Franchisee Defendants affected a regulatory taking under the Fifth Amendment because they have deprived his property of value without just compensation.

"A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2167 (2019). "Takings are either physical (an occupation of the property) or regulatory (a government restriction on private property that unreasonably interferes with the use and enjoyment of that property)." *T.M. Hous. Constr., Inc. v. City of Quinlan*, 2020 WL 887712, at *3 (N.D. Tex. Feb. 24, 2020) (Starr, J). Plaintiff's Amended Complaint contains no allegations that the City occupied the property where he lives or regulated that property to the extent of an unreasonable interference. As a result, Plaintiff's Fifth Amendment takings claim fails, and is DISMISSED WITH PREJUDICE.

*4. Plaintiff's 42 U.S.C. § 1985 Claims*

Finally, Plaintiff also claims that all named Defendants violated his civil rights under 42 U.S.C. § 1985(3). ECF No. 75 ¶¶ 20–21. As discussed above, the contours of the conspiracy alleged by Plaintiff are that ANB Defendants sold the property to a "friendly buyer" in exchange for promises to exercise their political influence to protect the property from enforcement actions

by City officials. *Id.* ¶¶ 113-117. Defendants argue Plaintiff's claim fails because he has failed to allege racial or class-based animus. ECF No. 81 at 17.

Section 1985 "creates a private civil remedy for three prohibited forms of conspiracy to interfere with civil rights under that section" *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 149 (5th Cir. 2010). Subsection 3 prohibits a conspiracy to deprive any person or class of persons of the equal protection of the law, or of the equal privileges and immunities under the law. 42 U.S.C. § 1985(3) "To state a claim under [Section] 1985(3), a plaintiff must allege (1) a conspiracy involving two or more persons; (2) for the purpose of depriving directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Texas Democratic Party v. Abbott*, 961 F.3d 389, 410 (5th Cir. 2020) (quoting *Hillard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994)). The facts alleged in the complaint must show the conspiracy was motivated by racial or class-based animus. *Horiast v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 271 (5th Cir. 2001); *Hillard*, 30 F.3d at 652–53.

Here, Plaintiff does not allege race or class-based discrimination or that the conspiracy against him was motivated by race or class-based animus. Nor does Plaintiff allege that Defendants conspired for the purpose of depriving him equal protection of the laws. To the contrary, Plaintiff alleges this particular conspiracy was motivated by the needs of certain Defendants "to unload a commercial property that was difficult to sell." ECF No. 75 at 21. At no point in the Amended Complaint does Plaintiff allege that Defendants conspired to sell the commercial strip center property to deny the civil rights of the plaintiff, or any other race or class. As a result, Plaintiff's § 1985(3) claim is subject to DISMISSAL WITH PREJUDICE for failure to state a claim. *See*

*Pickett v. Williams*, 2019 WL 3021196, at *7 (N.D. Tex. June 24, 2019) (dismissing Section 1985 claim for failure to state a claim where plaintiff did not allege that the conspiracy was motivated by race or class-based animus).

### B. Plaintiff's State Law Claims

Having addressed Plaintiff's federal claims, the Court now turns to those implicating Texas law. Plaintiff alleges claims for breach of restrictive covenants, public and private nuisance and government takings under the Texas Constitution. He seeks monetary damages, injunctive relief, and declaratory judgment against all Defendants. After considering the relevant law and consulting the appropriate statutory factors, the Court declines to exercise supplementary jurisdiction over plaintiff's state law claims and DISMISSES each claim WITHOUT PREJUDICE.

Federal courts possess jurisdiction over an entire action, including state law claims, where the federal and state law claims "derive from a common nucleus of operative fact" and are "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988). In determining whether it should "relinquish jurisdiction over pendent state law claims," a Court must look "to the statutory factors set forth by 28 U.S.C. § 1367(c), and to the common law factors of judicial economy, convenience, fairness, and comity" as set forth by *Carnegie-Mellon*. See *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 158–59 (5th Cir. 2011) (outlining factors district courts must consider in determining whether to decline jurisdiction over pendent state-law claims). The statutory factors are: whether "(1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). No single common law or

statutory factor is dispositive, so "[t]he overall balance of statutory factors is important." *Enochs*, 641 F.3d at 159 (citing *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008)).

Weighing the statutory factors in this case, the second, third, and fourth statutory factors counsel dismissal without prejudice. Plaintiff's state-law claims completely predominate, the federal claims are all dismissed, and there are no compelling reasons for this Court to retain jurisdiction.[4] *Enochs v. Lampasas Cty.*, 641 F.3d 155, 159 (5th Cir. 2011). Consideration of the common law factors of "judicial economy, convenience, fairness, and comity" favors dismissal without prejudice, and constitutes a compelling reason to decline jurisdiction. This suit is still in a relatively early phase—no discovery has occurred, and no hearings have been scheduled in this Court. Further, the Court has not addressed the merits of any state claim or defense asserted by the parties. *See id.* at 163 (holding that District Court abused its discretion by retaining jurisdiction over a case after all federal claims were dismissed and it had become a dispute over Texas state law, and no discovery had been set). Thus, under the relevant factors and case law, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims for breach of restrictive covenants, public and private nuisance, takings, injunctions, and declaratory judgments, and will DISMISS WITHOUT PREJUDICE those claims against the remaining Defendants.

PENDING MOTION

The Court has reviewed and is considering ANB Defendants' pending Motion for Sanctions under Rule 11 of the Federal Rules of Civil Procedure. ECF No. 63. The Court will rule

---

[4] While the Court is aware that several Defendants have raised Statute of Limitations defenses, this Court's dismissal of Plaintiff's state law claims will not imperil his arguments against this affirmative defense because the limitations will be tolled for a period of 60 days following the dismissal of this lawsuit if he chooses to refile in a court of proper jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE § 16.064 ("[t]he period between the date of filing an action in a trial court and the date of a second filing of the same action in a different court suspends the running of the applicable statute of limitations for the period if: (1) because of lack of jurisdiction in the trial court where the action was first filed, the action is dismissed or the judgment is set aside or annulled in a direct proceeding; and (2) not later than the 60th day after the date the dismissal or other disposition becomes final, the action is commenced in a court of proper jurisdiction.").

on that Motion prior to entering Final Judgment in this matter pursuant to Rule 58 of the same Federal Rules. Plaintiff's counsel is hereby advised and reminded of his Rule 11 obligation to present pleadings, written motions, and other papers that are consistent with Rule 11(b)(1), (b)(2), (b)(3), and (b)(4). *See* FED. R. CIV. P. 11; *see also* N.D. TEX. CIV. R. 11.

**CONCLUSION**

For the foregoing reasons, Defendants' Motions to Dismiss under Rule 12(b)(6) are GRANTED. Plaintiff's federal constitutional claims are DISMISSED WITH PREJUDICE. Plaintiff's Texas state-law claims are DISMISSED WITHOUT PREJUDICE. The Clerk of Court is directed to close ECF Nos. 76, 77, 79, 80, & 81.

**SO ORDERED.**

December 23, 2020.

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE